## MEYERS *v.* BLOCK.

## MEYERS *v.* LEVI.

### ERROR TO THE SUPREME COURT OF LOUISIANA.

Argued December 15, 16, 1886. — Decided January 31, 1887.

An injunction bond in an action in the District Court of the United States for the District of Louisiana conditioned that the obligors "will well and truly-pay the" obligee, "defendant in said injunction, all such damages as he may recover against us in case it should be decided that the said writ of injunction was wrongfully issued," which bond was made under an order of court, "that the injunction be maintained on the complaining creditors giving bond and security to save the parties harmless from the effects of said injunction" is a, sufficient compliance with the order of the court, and when construed with reference to the rule prevailing in the Federal courts (contrary to that prevailing in the state courts of Louisiana), that without a bond and in the absence of malice no damages can be recovered in such case, means that the obligors will pay such damages as the obligee may recover against them in a suit on the bond itself, whether incurred before or after the giving of the bond.

*Bein* v. *Heath,* 12 How. 168, distinguished.

THESE were actions at law in a state court of Louisiana against the obligors on an injunction bond given in an action brought in the District Court· of the ·United States for the District of Louisiana.   Judgments for plaintiff, which were affirmed by the Supreme Court of the state on appeal. Defendants sued out these writs of error.   The facts which make the Federal question are stated in the opinion of the court.

*Mr. John H. Kennard,* for plaintiffs in error.   *Mr. William Wirt Howe* was with him on the brief.

*Mr. Gus. A. Breaux* for defendants in error.

MR. JUSTICE BRADLEY delivered the opinion of the court.

These are suits on injunction bonds given by the plaintiffs in error to the defendants in error respectively, Friedlander being a surety.

On the 20th of January, 1874, Meyers & Levi, Lehman, Godchaux & Co., and Michael Frank filed a petition in the District Court of the United States for the District of Louisiana to have their alleged debtors, Block Brothers, a firm composed of Simon and Joseph Block, declared bankrupts; and the petition charged, amongst other things, that the alleged bankrupts had, on the 9th of January preceding, sold a certain store of goods, situated at Opelousas, to Solomon Isaacs, their brother-in-law, with intent to defraud their creditors. At, or immediately after, the filing of the petition in bankruptcy, the petitioning creditors filed a special petition for an injunction to prevent Isaacs from disposing of the store or its contents. A similar petition was filed against David Block, a brother of the members of the firm of Block Brothers, alleging that the bankrupts had sold to him another store of goods at Opelousas with intent to defraud their creditors. Writs of arrest and provisional seizure were issued against the bankrupts, and injunctions against Solomon Isaacs and David Block, in accordance with the prayers of the several petitions. Applications were immediately made by the parties to set these proceedings aside, and such a showing was presented to the District Court that on the 31st of January the following order was made, to wit:

"The rules to set aside the arrest, provisional seizure and injunction came up, . . . when, after hearing the pleadings, evidence and arguments, it is ordered by the court that the writs of arrest and provisional seizure be set aside, but that the injunction be maintained on the complaining creditors giving bond and security to save the parties harmless from the effects of said injunction in such sum as will be fixed by the court upon ascertaining the value of the property, and to that

end the parties shall take their evidence before Register Kellogg."

Evidence having been taken under this order, the court, on the 7th of February, 1874, made the following order, to wit:

"After hearing counsel on both sides, it is ordered by the court that the complaining creditors do give bond and security in the sum of $5000 in favor of Solomon Isaacs, and another bond in the sum of $1500 in favor of David Block, to save the parties harmless from the effects of the injunction issued in this cause."

Bonds were accordingly given in pursuance of these orders, and the injunctions were retained. Motions to dissolve them, however, were pressed, and after a large amount of evidence had been taken and laid before the court, they were dissolved on the merits on the 18th and 20th of March, 1874.

The bonds referred to were executed for the respective penalties required, but the conditions did not follow the precise terms of the orders. The bond given to Isaacs (with which that given to Block corresponded) was in the following words, to wit:

"Know all men by these presents that we, Meyers & Levi, Meyer Weill, Michael Frank, and Samuel Friedlander, are held and firmly bound, jointly and severally, unto Solomon Isaacs in the sum of five thousand dollars, lawful money of the United States of America, to be paid to the said Solomon, &c. Dated 19th February, 1874.

"Whereas the said Meyers & Levi, Meyer Weill, and Michael Frank have presented a petition to the honorable the District Court of the United States for the District of Louisiana, praying for a writ of injunction against the said Solomon Isaacs: Now, the condition of the above obligation is, that we, the above bounden Meyers & Levi, Meyer Weill, and Michael Frank, and ——, will well and truly pay to the said Solomon Isaacs, the defendant in said injunction, all such damages as he may recover against us in case it should be decided that the said writ of injunction was wrongfully issued."

(Signed) "MEYER WEILL, M. FRANK, LEHMAN, GODCHAUX & Co., MEYERS & LEVI, SAM'L FRIEDLANDER."

In January, 1875, suits were brought on these bonds by Solomon Isaacs and David Block, respectively, in the Sixth District Court for the parish of Orleans, to recover the damages sustained by reason of the injunctions, and on the 30th day of March, 1876, judgment was rendered in favor of Isaacs for the sum of $3250, with interest from judicial demand, and costs; and on the 22d of November, 1877, judgment was rendered in favor of Block for $1500, (the whole penalty of the bond,) with interest and costs.

These judgments were severally appealed to the Supreme Court of Louisiana, and, after much consideration, were affirmed. The cases are now here on writs of error to the latter court; and the same errors are assigned in both cases, namely:

*First.* The Supreme Court of Louisiana erred in subjecting the plaintiffs in error to the law and jurisprudence of Louisiana, when they were parties to an injunction bond given in equity in and by order of the Federal court.

*Second.* The Supreme Court of Louisiana erred in holding that the bond was regular.

*Third.* The Supreme Court of Louisiana erred in holding that an action could be maintained on the bond in suit before its condition was broken.

*Fourth.* The Supreme Court of Louisiana erred in holding that the bond in suit, construed with the order requiring it, could cover and bind the obligors for damages which had been sustained before it was given.

For supporting the first three assignments of error, reliance is mainly placed on the case of *Bein* v. *Heath*, 12 How. 168. There an injunction had been obtained in the Circuit Court of the United States for the Eastern District of Louisiana to suspend proceedings of seizure and sale under a mortgage, and to obtain the injunction the complainants were required, by order of the court, to give bond, with sureties, to answer all damages which the defendant might sustain in consequence of said injunction being granted, should the same be thereafter dissolved. The bond given was conditioned that the principal and sureties would pay to the defendant in the injunction (the plaintiff in the case of seizure and sale) all such damages as

she might recover against them in case it should be decided that the said injunction was unlawfully obtained; being in nearly the same form as the bonds now in controversy. The case proceeded to hearing, and a decree was made establishing the mortgage and dissolving the injunction, which decree was affirmed on appeal to this court. The mortgage debt was over $11,000, besides interest and costs. The property mortgaged was sold for $7000. Suit was then brought, in the same court, on the injunction bond, the plaintiff claiming not only damages for expense and delay, but ten per cent. per annum on the amount of the debt. The cause was tried by the court without a jury. On the trial, the court allowed the plaintiff, in proof of damages sustained, to give evidence of counsel fees and other expenses incurred by the plaintiff before the injunction was issued, and of the value of lawyers' services in this court not paid for, and of the amount of the rents and profits of the mortgaged premises pending the suit; to all of which exceptions were taken; and judgment was rendered for the penalty of the bond, the court being of opinion that the damages from the injunction were greater than that amount.

This court, on writ of error brought, reversed the judgment, Chief Justice Taney delivering the opinion. The bond was regarded by this court as a departure from the order requiring it, and as being in effect equivalent to an injunction bond given to suspend seizure and sale under the Louisiana practice, which operates as a security for the debt, as well as the damages arising from the injunction, the same as a recognizance in error in the English practice. Such a bond requires a recovery against the parties before the condition is broken; that is, a judgment for the debt in suit. This the court considered as entirely different from the bond required by a court of equity as a condition of granting an injunction, and different from the bond required by the order of the court in that case. "In proceeding upon such a bond," said the Chief Justice, "the court would have no authority to apply to it the legislative provisions of the state. The obligors would be answerable for any damage or cost which the adverse party sustained by reason of the injunction, from the time it was issued until

·it was dissolved; but to nothing more. They would certainly not be· liable for any aggravated interest on the debt, nor for the debt itself, unless it was lost by the delay, nor for the fees paid to the counsel for conducting the suit." The Chief Justice ·also· referred to the fact that no recovery had been had against 'the parties — nothing but a seizure and sale of the mortgaged premises — and a, dissolution of the injunction ;· and, therefore, as the court construed the bond, the contingency 'on which the obligors agreed to pay had not happened, · and the 'condition of the bond was not broken. Under the construction given to the bond in that case, the court could not well do otherwise than reverse the judgment of the Circuit Court.

But, according to our view, the bonds sued on in the cases before us· do not demand any such construction. It is plain· that they could not be intended as security for any debt or . demand in litigation, but as ·security only for the damages : that might be sustained by the issuing of the injunctions. · The' condition is to pay "all such damages as he [Isaacs, in the one case, and Block, in the other] may recover against us in case it should be decided that the said writ of injunction was wrongfully issued." Recover, how ? By the law of Louisiana damages may be recovered for suing out an injunction without just cause, independently of a bond. 3 La. 291. But this cannot be done in the United States courts. Without a bond no · damages can be recovered at all. Without a bond for the payment of damages or other obligation of like effect, a party against whom an injunction wrongfully issues can recover nothing but costs, unless he can make out a case of malicious prosecution. It is only by reason of the bond, and upon the bond, that he can. recover anything. When, therefore, the condition of the bond in these cases declares that the obligors will pay such· damages as the obligee 'may· recover against them, it· must mean that they will pay .such damages as he. may recover by a suit on the bond itself. Otherwise it is senseless and vain. Construed in this way, it is in strict conformity with the order which required it. It is in this way` that the bonds in· question were finally construed by the

Supreme Court of Louisiana, and we think that its construction was right.   In its opinion in the Block case the court says : "Under our construction we find no difference in the obligation of parties ' to save David Block harmless from the effects of an injunction issued against him,' and the obligation contracted in this bond, ' to pay to David Block, the defendant in said injunction, all such damages as he may recover against the obligors in case it should be decided that the said writ of injunction was wrongfully issued.'   We, therefore, hold that the bond in this case did comply with the condition prescribed in the judge's order, and that it was a valid bond."   The court not only construed the bonds in this way, but decided the cases upon this view as to their meaning and effect, awarding to the plaintiffs respectively only such damages as arose from the effects of the respective injunctions.   The actions were brought to recover such damages.   The petition in each case set forth the facts, showing the injuries which the plaintiff sustained as the immediate result of the injunction, and based his claim to a recovery entirely on the damages arising from such injuries.   The evidence was directed to the establishment of these facts, and conformed to the allegations of the petition.   The court, in its opinion in the case of David Block, after showing that the bond must be construed as intended to cover these damages, says : " After a careful examination and consideration of the evidence in the record, we are satisfied that plaintiff suffered damages to the full extent of the amount allowed him by the lower court.   The judgment appealed from is therefore affirmed."   In the case of Isaacs, the court at first reversed the judgment of the inferior tribunal, conceding that the order of the District Court required security for the entire damages, past as well as future, but considering the bond as not framed in conformity with it, and as not covering any damages but such as arose after it was given, as to which there was no distinct evidence.   Supposing, however, that damages might be recovered against the plaintiffs in the injunction independently of the bond, the court reserved to Isaacs the right to bring a suit for that purpose. But on a rehearing of the case, and after the argument and

decision in the Block case, the court came to a different conclusion, and held that the bond was in substantial conformity with the order, and was to be construed as intended to save the parties harmless from the effects of the injunction, adopting in all things the views expressed in the opinion in the Block case. It then adds: "This leaves open for consideration the question of the *quantum* of damages allowed by the judgment appealed from. We have gone over the evidence on this point with care and deliberation, and reviewed all the authorities cited bearing on this point, the same in both cases, and are satisfied that the amount awarded by the judgment is fully justified and sustained by the proof and the law." The court thereupon set aside its former judgment and affirmed that of the inferior court.

The fourth assignment of error is that the court erred in holding that the bond, construed with the order requiring it, bound the obligors for damages sustained before it was given. The solution of the question raised by this assignment depends upon the fair construction of the order, and of the bond given in pursuance of it, and read (as it should be read) in the light of it. The order was "that the injunction be maintained on the complaining creditors giving bond and security to save the parties harmless from *the effects of said injunction.*" The last words clearly mean *all the effects* of the injunction. The condition of the bond was, to pay "all such damages as he [the obligee] may recover against us in case it should be decided that the said writ of injunction was wrongfully issued." It seems plain to us that all the damages arising from the wrongful issue of the injunctions were intended to be covered by the bond as well as by the order; in other words, that the bond was intended and understood as a compliance with the requirements of the order. That is the natural and obvious meaning of its language when the two are read together; and the parties signing the bond must be presumed to have been cognizant of the order under which it was given.

It is unnecessary to review the authorities on this subject. It is undoubtedly true, that a surety cannot be held beyond

the terms or legal effect of his engagement; and when that has respect to the conduct or fidelity of the principal, or to any other matter usually contemplated as arising in the future, it is to be interpreted prospectively, and not retrospectively. But if, from the nature of the case, the subject of guaranty is a past transaction in whole or in part, and the language of the engagement, taken in its natural sense or legal effect, is broad enough to cover it, such language may properly be construed to do so.

As to the power of a court of equity to impose any terms in its discretion as a condition of granting or continuing an injunction, there can be no question. This subject is considered in the case of *Russell* v. *Farley*, 105 U. S. 433.

We see no error in the judgments of the Supreme Court of Louisiana in these cases, and they are affirmed, with costs.

*Affirmed.*