# DODGE *v.* COHEN.

EQUITY JURISDICTION; INJUNCTION BONDS AND UNDERTAKINGS;
MEASURE OF DAMAGES.

1. The Supreme Court of this District sitting as an equity court, has
power to assess damages on an undertaking given in conform-
ity to Rule 42 of that court, to make good to certain defendants
all damages by them sustained by reason of the wrongful
suing out of an injunction by the complainants restraining the
enforcement of executions on judgments at law.

2. Where a final decree in an equity suit, passed after an interlocu-
tory decree enjoining the enforcement of executions on judg-
ments and appointing receivers to receive and sell property
seized on such executions, is reversed on appeal and the cause
is remanded by this court with directions to dismiss the bill of
complaint and to make such other orders in regard to the fund
realized from the sale of such property as may be proper, it is
within the power of the lower court before passing a final
decree dismissing the bill and dissolving the injunction, to as-
sess the damages sustained by the defendants by reason of the
issuance of the injunction, on an undertaking given by the
complainants at the time the injunction was issued.

3. In the assessment of damages, in such a case, interest on the judg-
ments, execution on which was so stayed, should be allowed for
the whole period the injunction remained in force; and where
it appears that the funds remaining in the hands of the receiv-
ers for distribution amount to only about one-half the value of
the property seized on the executions and turned over to the
receivers, while the fair and reasonable cash value of the prop-
erty at the time of the seizure by the marshal was more than
would then have been sufficient to satisfy the executions in
full, the execution creditors are not to be restricted to the net
fund in the hands of the receivers as the basis upon which in-
terest is to be calculated.

4. In such a case, damages will be assessed on the undertaking
against the complainants and their surety, to the full amount
of the judgments, less the net amount remaining in the hands
of the receivers for distribution on account thereof, with in-
terest on the full amount to the date of the final decree dis-
solving the injunction, and the execution defendant will be
awarded damages to the amount of the surplus that would

have remained after the satisfaction of the judgments if exe-
cuted by the marshal, with interest for a like period.

5. An undertaking "to make good to the defendants all damages by
them or either of them suffered or sustained" by reason of
the wrongful suing out of an injunction restraining the enforce-
ment of executions on judgments, embraces not only such
damages as may result in the future but what has resulted
from the action of the complainants in staying and defeating
the enforcement of the executions.

No. 863. Submitted March 22, 1899. Decided May 3, 1899.

HEARING on an appeal by the complainants from a decree
of the Supreme Court of the District of Columbia overrul-
ing exceptions to and ratifying a report of the auditor
assessing damages on an injunction undertaking, and dis-
solving an injunction, ordering a distribution of a fund in
the hands of receivers, and dismissing a bill of complaint.
*Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Chapin Brown, Messrs. Blair & Thom,* and *Mr. Clarence
A. Brandenburg* for the appellants:

1. If any damages whatever should be assessed against the
principals and their surety on the "injunction undertaking"
filed in this cause it was error to assess any damages to the
appellees to cover a greater period than from the date of the
filing of the original bill (July 18, 1893), when the restrain-
ing order was issued, and which was the only injunction ever
issued in the case, up to the time (August 21, 1893), that the
receivers took entire possession and control of the property.
There can be no distinction made between the present case
and *Kerngood* v. *Gusdorf,* 5 Mackey, 161, where it was held
that parties to an injunction undertaking were liable for
damages only that have accrued during the time between
the date of the "suing out" of the injunction until the re-
ceivers take charge of the property under the order of the
court. See, also, *Lehman* v. *McQuown,* 31 Fed. Rep. 138.

2. The court erred below in overruling the sixth excep-

tion of appellants to the auditor's report, viz: "To that portion of said report that estimates the value of the probable proceeds of the goods and chattels of the defendant, Abraham I. Strasburger, which were levied upon, at $10,824.37, at the time the injunction was issued." Even if the goods might possibly have brought a larger net amount if sold by the court through its marshal instead of its receivers, yet the sureties on the "undertaking" should not be held responsible for any acts of the receivers, who were bonded officers of the court. *Lehman* v. *McQuown,* 31 Fed. Rep. 138; *Kerngood* v. *Gusdorf,* 5 Mackey, 161.

3. The court below erred in referring the cause to the auditor to assess damages; it had no authority to do anything further than to dismiss the bill and to make such other orders regarding the fund in the custody of the court as may be proper and not inconsistent with the opinion of this court on the former appeal. There was no discretion whatever left to the lower court to assess damages against the appellants. It was directed to "dismiss the bill." *West* v. *Brashears,* 14 Pet. 51; *Ex parte Mansfield,* 11 App. D. C. 558.

If any damages were to be assessed against the bondsmen under their contract in this case, they would have to be assessed before the dismissal of the bill. While the injunction had, long before the final decree of this court, ceased to be operative by reason of the receivers taking possession of the goods under order of the court, yet as to the question of assessment of damages under the wording of the "undertaking," and the contract of the bondsmen (appellants) in this case, the final decree of this court in dismissing the bill, did, *ipso facto,* dissolve the injunction. Encyc. of Pl. & Pr., Vol. 10, p. 1028; *Thompson* v. *McCormick,* 136 Ill. 135; *Disbro* v. *Disbro,* 37 How. Pr. 147.

If this court had intended or desired that any damages whatever were to be assessed by reason of the injunction having been "sued out" in this case, it was necessary that its decree contain the further direction or authority to the

lower court to proceed in this regard; while, on the contrary, it proceeds to dispose of the whole case by a dismissal of the bill and the distribution of the fund in court.

4. Under the facts in this case, it would be wrongful and inequitable to assess any damages (except costs). The principle laid down in *Russell* v. *Farley*, 105 U. S. 433, is appropriate in this case.

The suit by Dodge Bros. was more in the nature of a "bill of interpleader" than of an injunction suit. It was filed by them for the purpose of determining the rights of all the creditors of the defendant Strasburger. The claim of complainants was for only $400.20, and they sought simply to have the court determine the conflicting claims of all the creditors of Strasburger to a fund to be derived from certain property. Though any complainant in a "bill of interpleader" necessarily delays the final disposition of the fund, yet it is never presumed, if his intentions were honest and the suit has been fairly and honestly pursued, that he should be held for damages for delay caused, or for interest on fund or value of the property in dispute. The contention of the complainant in the case at bar "was honestly pursued." The lower court on the undisputed facts alleged in the bill sustained their contention. The question involved in this case was the interpretation for the first time by our local courts of a statute recently passed by Congress. It was an important one, and in the language of the court in *Russell* v. *Farley, supra,* "it would be a perversion, rather than a furtherance, of justice," not to supersede the stipulation of the bondsmen. See, also, *Broder* v. *Music Co.*, 84 Fed. Rep. 74.

5. Damages that occur or arise after the time of first final decree below can not be assessed against the bondsmen. The final decree being the act of the court itself "is *damnum absque injuria* for which there is no redress except a decree for costs of suit." *Russell* v. *Farley, supra.* No damages accruing after final decree can be assessed against the bond given on the preliminary injunction. *Lambert* v. *Haskell*, 80 Cal.

611, and cases cited therein; *Weber* v. *Wilcox,* 45 Cal. 301; *Woodson* v. *Johns,* 3 Munf. (Va.), 230; *Jeter* v. *Langhorne,* 5 Gratt. (Va.), 193; Beach on Injunctions, Sec. 202.

6. The wording of the bond in the case at bar, "to make good all damages suffered or sustained by reason of wrongfully and inequitably suing out the injunction," is unusual in injunction bonds or "undertakings." The usual form (as approved in *Bein* v. *Heath,* 12 How. 166), is: "To answer all damages which the defendant may sustain in consequence of the injunction being granted." The court below in framing its rules of court seems to have intentionally adopted practically the same language as that previously prescribed for "attachment undertakings" by common law Rule 12 of that court. The word "wrongful" is the usual one used in attachment undertakings or bonds and has received the proper construction to be given it by the courts. *Smith* v. *Story,* 23 Tenn. 169; *Sharp* v. *Hunter,* 16 Ala. 765; *Steen* v. *Ross,* 22 Fla. 480; *McCormick Co.* v. *Colliver,* 75 Iowa, 559; *Vorse* v. *Phillips,* 37 Iowa, 428; *Nockles* v. *Eggspieler,* 47 Iowa, 400; *Cooper* v. *Hill,* 3 Bush. 219; Drake on Att., Sec. 170 (A). In the case at bar the act of suing out the injunction must be wrongful and inequitable. We submit that under the proper legal effect to be given to the above words, it was not.

*Mr. Leon Tobriner* and *Mr. I. W. Nordlinger* for the appellees:

1. The injunction undertaking is required by the rules of the Supreme Court of the District. The entering into such an undertaking was made a condition precedent by the court which granted the injunction, and the injunction could not have become operative unless the undertaking as required had been given. They can not now escape liability, especially in view of the fact that the court below found that the case is one in which damages, by reason of the injunction, should be recovered, that appellees have sustained damages by reason thereof, and the additional fact that they are reme-

diless unless they can recover therefor upon the undertaking. *Meyers* v. *Block,* 120 U. S. 206, 211.

2. The law respecting injunction bonds or undertakings and the remedy thereon as announced in *Russell* v. *Farley,* 105 U. S. 443, should be followed. See, also, *Meyers* v. *Block,* 120 U. S. 206; *Furniture Co.* v. *Colby,* 35 Fed. Rep. 592; *Lea* v. *Deakin,* 11 Biss. 40; *Mining Co.* v. *Mining Co.,* 90 Fed. Rep. 15; *Leslie* v. *Brown,* 90 Fed. Rep. 171–174; 2 Beach Mod. Eq. Pr., Sec. 770; *Mining Co.* v. *Mining Co.,* 51 Fed. Rep. 107 : S. C. 75 Fed. Rep. 860.

3. The court below having held that, under the circumstances of the case, damages, if suffered, ought to be recovered in this proceeding, such conclusion should not be reviewed on appeal. *Russell* v. *Farley, supra.*

4. As to the measure of damages, the auditor finds that the goods levied upon and in the hands of the marshal, and the sale of which was enjoined, would have realized the net sum of $9,663.34, had the sale proceeded, and this amount would have been sufficient to pay in full the judgments, which at that time amounted in the aggregate to $9,250.52, leaving $412.82 balance to be paid the judgment debtor. The judgment creditors were entitled to receive these proceeds and would have received them but for the injunction. The measure of their damage would reasonably be interest upon the fund so payable to them, and this the auditor allowed. 1 Beach on Injunctions, Sec. 196; *Oelrichs* v. *Spain,* 15 Wall. 211.

5. The damage to the judgment creditors was inflicted when they and their officers were enjoined from selling the goods levied on, and when the property was taken out of their possession and control, and such damage continued and will continue until they receive what they would have received had the injunction not issued.

The undertaking was intended to secure all damages whether accruing before or after its execution, until the final disposition of the cause. By the prayers of the bill it

was sought: (1) To restrain the marshal from selling; (2) To enjoin the judgment creditors from "proceeding further" with their suits; (3) To create a constructive assignment for the benefit of creditors. The complainants and their surety were cognizant of the object of the bill, the condition of the litigation at the time they entered into the undertaking, and the purpose for which the undertaking was required, because the continuance of the injunction, the requirement of the undertaking, and appointment of receivers, were embodied in the same order, and these facts and circumstances should be considered in construing liability upon the undertaking. *Levy* v. *Taylor,* 24 Md. 282; *Hamilton* v. *State,* 32 Md. 348; *Meyers* v. *Block, supra*; *Fulton* v. *Fletcher,* 12 App. D. C. 1.

6. The mandate controls as to all matters passed on by the appellate court, and the inferior court can not vary or examine it for any other purpose than execution or give other or further relief, upon any matter decided on appeal. But it may consider and decide any matters left open by the mandate. *In re Sandford Fork and Tool Co.,* 160 U. S. 247, 256. When this court directed a dismissal of the bill, it must be presumed, unless the contrary expressly appear, that it intended a dismissal with all such incidents, and subsidiary proceedings to which the party, in whose favor the dismissal operated, was entitled. One of those incidents was the dissolution of the injunction and the recovery of such damages as had been caused by it, if in the opinion of the court dismissing the bill the case was one in which damages ought to be recovered. *Raum* v. *Reynolds,* 15 Cal. 459.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This case has been in this court on a former appeal, and appears under the titling of *Strasburger* v. *Dodge,* 12 App. D. C. 37, where the facts of the origin and progress of the

litigation to the reversal of the decree by this court, fully appear. That first appeal was taken by certain of the creditors of Abraham Strasburger, the insolvent debtor, from a decree declaring the judgments obtained by such creditors against Strasburger, by his confession, to have the effect and operation of a preferential assignment within the contemplation of the Act of Congress of February 24, 1893, and by force of the act made a general assignment for the benefit of all the creditors. The executions on the judgments then in the hands of the marshal, and which had been levied on the property of the debtor, were all enjoined and the property placed in the hands of receivers for sale. That decree, on appeal, was reversed by this court, and the cause was remanded with directions to the court below to dismiss the bill and to make such other orders regarding the fund in the custody of the court as might be proper, not inconsistent with the opinion of this court. It is upon the proceeding of the court below, after the receipt of the mandate of this court, that the questions presented by the present appeal have arisen.

In order to the full and clear understanding of the case as now presented, it is necessary to refer to some of the proceedings that were had prior to the first appeal, and which led to the issuing of the injunction and taking the property out of the custody of the marshal and placing it in the hands of the receivers.

The bill was filed on the 18th of July, 1893, by Dodge Brothers, for themselves and such other creditors of Strasburger as might think proper to come in and make themselves parties; and the object of the bill was to have declared as a voluntary assignment for the benefit of all the creditors, certain confessed judgments in favor of particular creditors. These creditors were made parties defendants, and so were Strasburger and the marshal. Upon that bill a restraining order was passed by the court to be of force "until further order, to be made, if at all, after a hearing,

which was fixed for the 25th day of July, 1893." The defendants answered, and the case came on for hearing, and on August 10, 1893, the court passed an order restraining and enjoining the marshal from selling or otherwise disposing of the goods, etc., levied upon by him, and ordering that "the property and assets now held by him, having been seized and levied upon as the property of the defendant, Abraham Strasburger, under executions issued to him in the suits at law, numbered, etc., in the Supreme Court of the District of Columbia, be turned over and delivered by him to the receivers appointed in this cause. And it is further ordered, that the defendants, Joseph A. Goldstein, Isaac Steinem, Samuel Steinem, Samuel Cohen, Herman Adler and Benjamen I. Cohen, be, and they are hereby restrained and enjoined from proceeding further in the suits at law, numbered, etc., as prayed in said bill."

Receivers were appointed to take charge of the property, with authority to sell the same; and it was ordered "that the complainants in this cause, Dodge Brothers, shall file the usual undertaking, with surety to be approved by this court, on the issuing of an injunction under Rule 40 [now 42] of the equity rules of this court, and for costs of this suit; this order to take effect upon the filing and approval of this undertaking."

The rule of court referred to as Rule 40, is Rule 42 in the last revision. The rule provides specifically the terms and conditions of the undertaking, and for the proceedings thereon to ascertain and determine the damages, in the event of the injunction being wrongfully issued.

In obedience to the order of court of August 10, 1893, and in conformity to equity Rule 40 (now 42), the complainant, Dodge Brothers, with Leopold Luchs, as surety, filed the undertaking required, which is in these terms:

"Chauncey W. Dodge and Harry D. Dodge, partners, trading as Dodge Brothers, the complainants, and Leopold Luchs, surety, hereby undertake to make good to the de-

fendants, and each of them, all damages by them, or either
of them, suffered or sustained by reason of wrongfully and
inequitably suing out the injunction in the above entitled
cause, and stipulate that the damages may be ascertained in
such manner as the justice shall direct, and that on dissolv-
ing the injunction he may give judgment thereon against
the principal and sureties for said damages and the costs of
this suit, in the decree itself dissolving the injunction."

This undertaking was signed by the principals and the
surety, and was approved by the court, August 21, 1893.

The receivers disposed of the property that was turned
over to them, and the cause was referred to the auditor to
state an account, and to distribute the proceeds of sales.
And on March 23, 1897, a decree was passed declaring the
several judgments and executions thereon to constitute a
voluntary assignment, and to be for the benefit of all the
creditors of the insolvent debtor, and ordering a distribution
of the funds in the hands of the receivers, among all the
creditors *pro rata.* It was from this decree that the first ap-
peal was taken to this court, by the judgment creditors, and
a *supersedeas* bond was given by the appellants.

Upon the reversal by this court, and the going down of
the mandate, the court below referred the cause to the audi-
tor, "to ascertain and report the damages, if any, sustained
by the defendants or either of them, by reason of the wrong-
fully and inequitably suing out of said injunction granted
by this court, and also the costs of this cause."

Under this reference, the auditor proceeded and took testi-
mony on behalf of the parties on both sides of the litigation,
and he stated an account, and made a report explanatory
thereof; and in explaining schedule A he says:

"I have next stated the conditions of the executions in the
hands of the marshal upon which levies had been made on
the 10th of August, 1893, the date of the issue of the injunc-
tion. This statement shows that there would have been in
the hands of the marshal funds sufficient to have satisfied

the three executions at that date, and a small balance to be returned to the execution defendant.  There is at this time a balance in the hands of the receivers, which, being the proceeds of the goods and chattels subject to the levy at the time of the injunction, should be appropriated to the said executions in the order of their seniority of levy as of that date, and such an appropriation is made in this schedule.

" It will be observed that this appropriation would have satisfied the senior execution in full, leaving a balance to be applied on account of the second execution; the latter application leaves a very small balance of the second judgment unsatisfied.

"Then follows in this schedule a statement of the damages sustained:

" The judgment of the Cohen-Adler Shoe Co., as it stood on the 10th of August, 1893, being satisfied in full from the receiver's fund, the damages sustained by that judgment plaintiff consist of interest on the amount of the judgment from that date, calculated, for convenience, to the 1st of July next, 1898.

"The damages sustained by Steinem Bros. consist of a small balance of the judgment not reached by the funds in the receiver's hands, and interest on the full amount of the judgment from the 10th of August, 1893, to the 1st of July next, 1898.

"The damages sustained by Rich & Co. consist of the full amount of the judgment as of August 10, 1893, with interest thereon until paid, calculated, for convenience, until the 1st of July, next, 1898.

"The damages sustained by the defendant Strasburger consist of the balance which he would have received as estimated in the case of a sale by the marshal, and interest thereon from the 10th of August, 1893, to the 1st of July, next, 1898."

As will appear from the auditor's statement of the condition of the executions, and the assets applicable thereto, at

the time of granting the injunction and turning over the property to the receivers, the amount in the hands of the marshal would have been sufficient to satisfy the three executions levied by him, leaving a balance of $412.82, payable to the judgment debtor.

To this report and account of the auditor the appellants excepted upon various grounds :

1. That a court of equity of this District has no jurisdiction to assess damages on an injunction bond of the character given in this cause.

2. That, under the mandate of this court, the court below could not assess damages upon the injunction bond or undertaking, but could only proceed to dismiss the bill, and to take such action as the mandate directed.

3. That no damages can be recovered upon the injunction bond or undertaking filed in this cause, because the injunction issued on the 10th of August, 1893, was not wrongfully and inequitably sued out.

4. No damages are recoverable upon the injunction bond or undertaking, because there has been no breach of the terms, provisions, or conditions thereof.

5. That there were no damages sustained by the defendants, or either of them, by reason of the injunction.

6. That the auditor was in error in estimating the value, or the probable proceeds of the goods of the defendant Strasburger, levied upon by the marshal, at $10,824.37, at the time the injunction was issued.

7. That there was error, because the damages assessed included all the expenses incurred by the receivers, including their commissions.

8. That there was error because the auditor has assessed as damages interest on the judgments from August 10, 1893, to the date when the damages shall be paid, whereas the interest, if any be allowed, should only run to the 23d of March, 1897, when the final hearing of the cause was had; and—

9. That if any damages be assessable by this court, the measure thereof should only be the interest upon the funds in the hands of the receivers for distribution, from August 10, 1893, to March 23, 1897.

The case being brought to final hearing on October 10, 1898, these exceptions were all overruled, and the auditor's report and account fully ratified and confirmed; and the court thereupon passed a final decree, whereby the injunction was dissolved, and the fund in the hands of the receivers was directed to be paid over, and judgment was entered on the auditor's account, in pursuance of the undertaking, against Dodge Brothers and Leopold Luchs, for the amount of damages ascertained by the auditor, and the costs, and that the bill be dismissed. It is from this decree that the present appeal is taken; and the errors assigned are the overruling of the exceptions.

It will not be necessary to review in detail each separate exception, as several of them may be considered together, and embraced in one general view.

1. The first question raised by the exceptions to the auditor's report is, had the court below, as a court of equity, power and jurisdiction to assess the damages, on the undertaking of the appellants, occasioned by the wrongful issuance of the injunction, restraining the enforcement of the executions on the judgments against the insolvent debtor? This, we think, can not be regarded as an open question in the courts of the United States. Equity Rule 42 of the court below expressly provides that, as a condition precedent to the right to obtain an injunction in a case such as that instituted by the complainants, there should be an undertaking to make good to the defendant " all damages by him suffered or sustained, by reason of wrongfully and inequitably suing out the injunction, and stipulate that the damages may be ascertained in such manner as the justice shall direct, and that, on dissolving the injunction, he may give judgment thereon against the principal and sureties for said

damages in the decree itself dissolving the injunction." The undertaking to which we have referred, and which we have quoted *in extenso*, was given in strict conformity to the rule; and there can certainly be no question of the competency of the court to prescribe the rule. The court may prescribe the terms and conditions upon which it will grant the injunction; and in order that delay and unnecessary litigation may be avoided, and that complete justice may be done and administered in the one and the same proceeding, it is fully within the power of the court to provide for the assessment of the damages occasioned by the wrongful issuance of the injunction, and the consequent, breach of the bond or undertaking.

This subject has been considered by the Supreme Court of the United States upon more than one occasion. In the case of *Russell* v. *Farley*, 105 U. S. 433, the subject, and the general practice of the courts of equity, both in England and this country, were extensively discussed by the late Mr. Justice Bradley. In that case it was held, that where neither the bond or undertaking given, nor the statute law, nor any rule of court, prescribes a specific mode of assessing damages, and the condition of the bond or undertaking is simply to pay such damages as the adverse party may sustain by reason of the injunction, if the court finally decides that the party to whom it was granted was not entitled to it—in such case, it would seem that the court may, *as an incident to its jurisdiction*, cause them to be assessed under its own direction, or leave the party to his action at law. But no doubt or question is supposed to exist, as to the power or jurisdiction of the court where, as in this case, there is an express rule of court providing for the mode of assessing damages, and the undertaking has been given in conformity to that rule. The principle is fully sanctioned in the case of *Meyers* v. *Block*, 120 U. S. 206. And indeed the principle has been recognized as fully established in all the courts of the United States, where the question has arisen. *Lea* v.

*Deakin,* 11 Biss. 40, 42; *Tobey Furniture Co.* v. *Colbey,* 35 Fed. Rep. 592–594; *Leslie* v. *Brown,* 90 Fed. Rep. 171, 174.

2. But, it is contended by the appellants that inasmuch as the mandate of this court, on the reversal of the decree on the former appeal, only directed that the bill be dismissed, and that such other orders be made in regard to the fund in the custody of the court as might be proper, not inconsistent with the opinion of this court, therefore there was no right or power left in the court below to assess the damages that had accrued to the defendants, by reason of the restraint imposed by the injunction. In this contention, however, we can not concur. On the former appeal, this court, in disposing of the case as then presented, had no question before it of the damages that might be claimed by reason of the injunction that had restrained the executions in the hands of the marshal, nor of the right or power of the court to assess those damages. It simply reversed the decree appealed from and remanded the cause that a final decree might be passed, disposing of the bill and the fund in the control of the court. It did not, and could not, on that appeal, decide any question in regard to the damages that had accrued by reason of the injunction, as that involved necessarily a further inquiry into matters of fact. The inquiry and assessment of damages on the undertaking was incidental and collateral to the principal case, and hence not disposed of in passing upon the case as stated by the bill. The question of damages arising on the undertaking was simply a consequence of the final result of the cause, and which final result gave rise to the subsequent inquiry as to the damages sustained by the defendants. This is fully and clearly illustrated by the English case of *Newby* v. *Harrison,* 3 D. F. & J. 290, in which the assessment of damages occasioned by the restraint of the injunction, was adjudged to be proper after the dismissal of the bill. But in the present case the bill was not dismissed, nor was the injunction dissolved, until the final decree of October 10, 1898, passed

on the auditor's report, and after judgment entered for the damages ascertained. That decree was in no sense inconsistent with the opinion of this court on the former appeal.

3. It is next contended by the appellants, that damages can not be assessed, by reason of the stay of executions by the injunction, for any time subsequent to the 23d day of March, 1897, the date of final hearing upon which the decree was passed from which the first appeal was taken; and that interest by way of damages should only be allowed, if any be allowed at all, on the amount of the funds in the hands of the receivers for distribution, from August 10, 1893, to March 23, 1897. But to this contention we can not assent. The decree of March 23, 1897, was suspended by the appeal of the defendants in the bill, and it did not operate, nor did it profess to operate, in any manner to dissolve the injunction previously granted. The injunction remained in force, and as long as the injunction remained in operation the undertaking remained in force as a means of indemnity. And as to the distributable fund in the hands of the receivers as the only basis for calculation of damages, that would not seem to be supported by any principle of reason or justice. It is shown that the amount of the funds in the hands of the receivers, for actual distribution, is only a little more than half the value of the property that was taken out of the hands of the marshal and turned over to the receivers, and which was liable for the satisfaction of the executions. There is no principle, therefore, that would restrict the execution creditors to the net fund in the hands of the receivers, as the sole basis upon which interest should be calculated, by way of damages for the wrongful defeat of their executions.

4. We come now to the question, what is the proper measure of damages which the plaintiffs in the judgments are entitled to receive for the wrongful deprivation of the benefits of the levies made under their executions in the hands of the marshal? It is shown by the proof in the case,

taken and reported by the auditor, that the fair and reasonable cash value of the property seized under the executions, if it had been allowed to be sold by the marshal, would have been more than enough to satisfy the executions in full. It is contended, however, by the appellants, that, under the circumstances of the case, the sale of the property by the marshal under the executions in his hands was not wrongfully and inequitably enjoined, and that no damages should be assessed as occasioned by the injunction. But we perceive no merit in this contention, and clearly there is no substantial justice upon which it can be founded. If the property was illegally and therefore wrongfully taken out of the custody of the marshal and placed in the hands of receivers for sale, whereby great loss was occasioned to the execution creditors, there can be no reason or justice for withholding the damages that they have sustained by the injunction. Otherwise there was no sense or reason in requiring the undertaking to be entered into, as a condition upon which the injunction was granted. As said by the Supreme Court, in *Russell* v. *Farley*, *supra*, "When the court sees no just cause for superseding or suspending the effect of an injunction bond, or undertaking, it should be enforced in pursuance of its terms; and the party for whose benefit it was given will be entitled to an assessment of damages."

The method adopted by the auditor of ascertaining the value of the property, as stated in his report, we think was entirely fair and legitimate. The appellants have no reasonable ground of complaint of the result attained by the auditor; and clearly the judgment creditors were entitled to receive the proceeds of the property under the executions, and would have received them but for the injunction and the interposition of the receivers. The auditor has allowed as damages, the interest upon the fund that the execution creditors would have received, if their executions had not been arrested, and the property taken from the marshal, and placed in the hands of receivers; and this

measure of damages, we think, is proper, and the one sanctioned by the authorities. This principle was adopted and applied by the Supreme Court in the case of *Oelrichs* v. *Spain,* 15 Wall. 211, 230. In that case the court said: "The delay caused by the injunction was the period for which interest was allowed by the court below. Whether the payment was, or would have been, improperly made, is an inquiry which does not arise in this case, and with which the appellants have nothing to do. It is sufficient for the purposes of this case, that there was, in fact, such delay, and that it proceeded from the cause alleged in the bill."

The principle applicable here is well summarized by Mr. Beach in his work on Injunctions, Sec. 196, where he says: "When the effect of an injunction is to deprive the party enjoined of the use of money which is due him, the interest thereon during the pendency of the injunction may be a proper measure of his damages. Thus, where a judgment creditor was enjoined from the collection of his judgment, and the injunction was dissolved as wrongful, the measure of his damage as against the sureties was held to be the interest on the judgment for the time the injunction was in force."

No more lenient principle than this could be sanctioned by any principle of justice.

There has been a question in the argument, as to the time from which the undertaking operated as an indemnity to the judgment creditors. But the nature of the case and the object of the injunction would seem to be sufficiently plain to exclude all doubt on that subject. The undertaking was "to make good to the defendants, and each of them, *all damages* by them, or either of them, *suffered or sustained by reason of wrongfully and inequitably suing out of the injunction in the above entitled cause,*" etc. Not only what might, by possibility, be the result in the future, but what had and would be the result of the action of the complainants in staying and defeating the enforcement of the executions of the

defendants, and withdrawing the only means by which the executions could be satisfied, and placing them in the hands of receivers, upon the allegation that the property was unduly and illegally seized. This was the object sought to be attained by the bill, and this was the object accomplished 'by means of the injunction, during the time of its operation. In treating of a similar proposition, in the case of *Meyers* v. *Block, supra,* the Supreme Court said:

"The fourth assignment of error is that the court erred in holding that the bond, construed with the order requiring it, bound the obligors for damages sustained before it was given. The solution of the question raised by this assignment depends upon the fair construction of the order, and of the bond given in pursuance of it, and read (as it should be read) in the light of it. The order was 'that the injunction be maintained on the complaining creditors giving bond and security to save the parties harmless from *the effects of said injunction.*' The last words clearly mean *all the effects* of the injunction. The condition of the bond was to pay 'all such damages as he (the obligee) may recover against us in case it should be decided that the said writ of injunction was wrongfully issued.' It seems plain to us that all the damages arising from the wrongful issue of the injunctions were intended to be covered by the bond as well as by the order; in other words, that the bond was intended and understood as a compliance with the requirements of the order. That is the natural and obvious meaning of its language when the two are read together; and the parties signing the bond must be presumed to have been cognizant of the order under which it was given.

"It is unnecessary to review the authorities on this subject. It is undoubtedly true that a surety can not be held beyond the terms or legal effect of his engagement; and when that has respect to the conduct or fidelity of the principal or to any other matter usually contemplated as arising in the future, it is to be interpreted prospectively, and not

retrospectively.    But if, from the nature of the case, the subject of guaranty is a past transaction in whole or in part, and the language of the engagement taken in its natural sense or legal effect is broad enough to cover it, such language may properly be construed to do so."

The language of the order granting the injunction, and of the undertaking given in pursuance of that order, would seem to leave no room for question as to the intent of the parties, or as to the comprehensive nature of the undertaking.    It embraced all the damages occasioned by the operation of the injunction.

Upon review of the whole case, we find no error in the decree appealed from and the same must be affirmed; *and it is so ordered.*                    *Decree affirmed.*