## OWL CREEK COAL CO. v. BIG HORN COL-LIERIES CO.

District Court, D. Wyoming. November 7, 1929.

No. 1931.

Wilfred O'Leary, of Cheyenne, Wyo., for plaintiff.

Malcolm Lindsey and L. H. Larwill, both of Denver, Colo., and Clyde M. Watts, of Cheyenne, Wyo., for defendant.

KENNEDY, District Judge. The plaintiff and defendant are engaged in mining coal in adjacent territories in the northern part of this state. The plaintiff began a suit in equity seeking to enjoin the defendant from taking out the last pillars of coal in its territory adjacent to that of the plaintiff, upon the ground that the action on the part of the defendant would cause its property to cave, and, being heavily watered, that the plaintiff would not have any method of pumping out the water for the protection of its own property, except through the entryways and use of defendant's workings, which defendant had refused to plaintiff, thereby causing great and irreparable injury to plaintiff's property. Upon the filing of the bill plaintiff sought to secure a temporary restraining order, which was granted upon the condition of filing a bond fixed by the court in the sum of $2,000 to indemnify defendant against any loss which might be sustained in the event such order were found to have been improvidently issued, together with an order to show cause setting the matter down for hearing as to why a temporary injunction should not issue. Defendant appeared and moved to dissolve the temporary restraining order, which upon hearing was granted and a temporary injunction denied.

The defendant in due time filed its answer, consisting of four defenses, together with two counterclaims; the first counterclaim in brief being based upon an alleged transgression of the plaintiff company in pumping water from its own mine, which augmented the flow of a stream running across defendant's property, thereby causing excessive drainage into defendant's mine, by reason of which defendant suffered severe damage in being compelled over a period of years to take out this surplus drainage water, in the sum of $25,000.

The second counterclaim is based upon the alleged damage claimed to have been suffered by defendant in not being able to operate its mining property during the time the restraining order was in existence and seeking to recover against the plaintiff and its sureties on the bond fixed and required by the court at the commencement of the suit.

The matter is before the court upon what is the equivalent of three motions to strike. The first is directed to the four defenses in the answer contained, the second to the first counterclaim, and the third to the second counterclaim.

At the hearing upon the motions counsel for plaintiff moved to withdraw the motion directed to the four defenses of the answer, and, counsel for defendant not objecting, such motion will be granted and an order entered accordingly.

As to the second motion to strike the first counterclaim, the court considers that the same point as is here presented was heretofore ruled upon in the case of The Fleming Brothers Lumber Company v. McDonald Amusement Company (No. 1766) 36 F.(2d) 483, in which case, in disposing of the matter, this court said:

"The exact point presented is as to whether or not a strictly legal claim growing out of the same transaction as the matter in suit can be interposed as a counterclaim in the answer under Equity Rule 30 [28 USCA § 723] and from an examination of the authorities does not leave the question free from doubt. The matter has been considered by the Supreme Court in the case of American Mills Co. v. American Surety Co., 260 U. S. 360, on page 364, 43 S. Ct. 149, 151, 67 L. Ed. 306, where the language of the court spoken through Mr. Chief Justice Taft, reads as follows:

" 'The petitioner argues that must and may are here set over against one another for the purpose of enforcing the intention and effect of the rule to require the defendant in an action in equity to set out any counter-

486

claim arising out of the subject-matter of the bill, but to leave it to the option of the defendant whether a counterclaim or set-off not arising out of the same transaction shall be interposed or shall be prosecuted by independent bill. The respondent contends that, while this may be correct, the counterclaim growing out of the same transaction must be an equitable claim, and not a legal one, as here. We concur in this view.

" 'The new equity rules were intended to simplify equity pleading and practice by limiting the pleadings to a statement of ultimate facts without evidence and by uniting in one action as many issues as could conveniently be disposed of. But they normally deal with subjects-matter of which, under the dual system of law and equity, courts of equity can properly take cognizance. They certainly were not drawn to change in any respect the line between law and equity as made by the federal statutes, practice and decisions when the rules were promulgated. By the construction which petitioner would put upon rule 30, it is an attempt to compel one who has a cause of action at law to bring it into a court. of equity and then try it without a jury whenever the defendant in that cause can find some head of equity jurisdiction under which he can apply for equitable relief in respect of the subject-matter. The order of procedure as between the law and equity sides in such cases always has been that the equity issue is first disposed of by the chancellor and then, unless that ends the litigation, the original plaintiff may have his action at law and his trial by jury secured him by the Seventh Amendment of the Constitution. Liberty Oil Co. v. Condon National Bank, 260 U. S. 235, 43 S. Ct. 118, 67 L. Ed. 232. Petitioner's construction of rule No. 30 would deny the successful defendant in the equity action this right. Petitioner seeks to avoid the dilemma by the suggestion that the rule would be satisfied by merely pleading the action at law without proving it, but this would be futile. The counterclaim referred to in the first part of the paragraph must therefore be an equitable counterclaim, one which like the set-off or counterclaim referred to in the next clause could be made the subject of an independent bill in equity.'

"This language would seem to indicate that a legal claim, as distinguished from what might be the subject of an independent suit in equity can not be interposed by way of counterclaim in an equity suit. The subsequent language of the court, however, found on page 366 of 260 U. S., 43 S. Ct. 149, 151, 67 L. Ed. 306, undoubtedly gives occasion for

the dispute here. The opinion there reads as follows:

" 'The result is that the petitioner as defendant was not obliged to set up and prove its action at law under rule 30, and when it did so, by its affirmative action, it waived its previous objection to the equitable jurisdiction and also its right of trial by jury.'

"Montgomery in his Third Equity Practice, and Simpkins in his Federal Practice, have adopted the theory that a legal claim growing out of the same transaction as is involved in the equity suit is presentable by answer in the form of a counterclaim.

"On the other hand, our own Circuit Court of Appeals, in the case of Hyde v. Blaxter, 299 F. 167, seems to have spoken to the contrary in discussing the decision of the American Mills Company Case, supra. Judge Lewis, in speaking for the court in the Hyde Case, at page 172 of 299 F., uses the following language:

" 'Furthermore, a proceeding under the statute to recover damages is an action at law and not a proceeding in equity, hence the lessor could not set up such a claim in his crossbill. Equity Rule 30 requires that a counterclaim cannot be set out in a cross-complaint, unless it be the subject of an independent suit in equity against the plaintiff. American Mills Co. v. Surety Co., 260 U. S. 360, 43 S. Ct. 149, 67 L. Ed. 306. For other cases in which the rule has been considered, see Victor Talking Machine Co. v. Brunswick-Balke-Collender Co. (D. C.) 279 F. 758. It is true that the crossbill in form seeks equitable relief in addition to the statutory damages, but the complaint and the answer thereto were of sufficient scope to enable the court to give the equitable relief to which either party might be entitled; and we think it clear that the substantive purpose of the crossbill was only for recovery of damages.'

"Whatever may be the personal views of this court, it would seem that we should be bound by the construction of our own Circuit Court of Appeals as to the ruling of the Supreme Court in the American Mills Case, which, it would appear, denies the right of the defendant to present a strictly legal demand by way of counterclaim in an equity suit. Until that court otherwise decides, the decision here will be in conformity with the construction given in the Hyde Case, which means that the motion to strike out that portion of the answer purporting to present the legal claim will be sustained."

To be consistent and in line with what I consider to be the ruling in the Eighth Circuit Court of Appeals, under whose jurisdic-

tion we then were, the opinion in that case having been read by Judge Lewis, the Senior Judge of our new Tenth Circuit, I shall adopt the conclusion and the reasoning used in the Fleming Bros. Case. This motion to strike will therefore be sustained and an order entered accordingly.

As to the third motion to strike, another controversial question arises, turning upon decisions of the Supreme Court which apparently likewise give room for argument. The point here is as to whether the court may proceed in the same equity suit to consider, adjust, and determine damages arising from the giving of a bond incident to the granting of the preliminary restraining order, or whether such damage must be ascertained in an independent suit at law.

In the case of Russell v. Farley, 105 U. S. 433, 26 L. Ed. 1060, in the discussion of the point, the Supreme Court at page 444 et seq., used the following language:

"But where, as in the present case, no specific provision is made either in the bond, or by any statute or rule of court, and the condition of the bond is simply to pay such damages as the parties enjoined may sustain by reason of the injunction if the court finally decide that the party was not entitled thereto, as before stated some difference of opinion exists as to the power of the Court of Chancery to assess the damages, and whether the only proper method is not an action at law on the bond. The appellants insist that the latter is the only proper and legal course. In the case of Bein v. Heath (12 How. 168, 179 [13 L. Ed. 939]), Mr. Chief Justice Taney made this remark: 'A court proceeding according to the rules of equity cannot give a judgment against the obligors in an injunction bond when it dissolves the injunction. It merely orders the dissolution, leaving the obligee to proceed at law against the sureties, if he sustains damage from the delay occasioned by the injunction.' In that case, an injunction bond had been given to stay proceedings on an executory process in the Circuit Court for the District of Louisiana, and, in an action on the bond, that court had given judgment against the sureties, not merely for the damages arising from the delay caused by the injunction, but for the whole debt, interest and costs, in accordance with the law of Louisiana, where injunction bonds are binding to that extent, and where judgment is usually given against the sureties as parties to the cause, on dismissing the injunction, similar to the proceeding against stipulators in admiralty. This court held that the circuit courts sitting in equity could not take such a

bond, or give it such effect, and reversed the judgment. The remark that the bond must be prosecuted at law was a mere passing remark; it was so prosecuted in that case; but from the great experience of the Chief Justice, it undoubtedly expressed the prevailing practice with regard to ordinary injunction bonds given under the Maryland statute in cases of injunctions to stay proceedings at law. Whether the remark can be understood as having a wider scope is doubtful.

"A decision on the point, however, was made by Mr. Justice Curtis, on the first circuit, in the case of Merryfield v. Jones [C. C.] 2 Curtis C. C. 306 [Fed. Cas. No. 9486]. That was a patent case in which an injunction had been issued upon condition of entering into bond to pay the defendant any damages he might suffer by reason of the injunction if finally determined not to be rightful. On dismissal of the bill, motion was made to refer to a master the question of damages. Mr. Justice Curtis denied the motion, holding that the party's remedy was an action at law, but he only referred to the case of Bein v. Heath. The opinion is brief, and it does not appear that the question was very fully examined. The learned justice seemed to think that, inasmuch as the bond gave a legal action, the court sitting in equity had no jurisdiction over the question of damages.

"Other cases are referred to by the counsel of the appellants to sustain their position; but upon a careful examination we are not satisfied that they furnish any good authority for disaffirming the power of the court having possession of the case, in the absence of any statute to the contrary, to have the damages assessed under its own direction. This is the ordinary course in the Court of Chancery in England, by whose practice the courts of the United States are governed, and seems to be in accordance with sound principle. The imposition of terms and conditions upon the parties before the court is an incident to its jurisdiction over the case; and having possession of the principal case, it is fitting that it should have power to dispose of the incidents arising therein, and thus do complete justice, and put an end to further litigation. We are inclined to think that the court has this power; and that it is an inherent power, which does not depend on any provision in the bond that the party shall abide by such order as the court may make as to damages (which is the usual formula in England); nor on the existence of an express law or rule of court (as adopted in some of the States) that the damages may be ascertained by reference or otherwise, as the

court may direct; this being a mere appendage to the principal provision requiring a bond to be taken, and not conferring the power to take one, or to deal with it after it has been taken. But whilst the court may have (we do not now undertake to decide that it has) the power to assess the damages, yet if it has that power, it is in its discretion to exercise it, or leave the parties to an action at law. No doubt in many cases the latter course would be the more suitable and convenient one."

Following this decision, the Federal courts have a number of times had the point under discussion.

In Lea v. Deakin, 13 F. 514 (C. C. Ill. 1882), the court said at page 515: '

"The litigation which has grown out of the controversy in this case, and the suits which have been brought upon some of the bonds, have induced the district judge and myself to fully consider this question in the light of all the authorities which have been presented, and we have come to the conclusion that the sounder and better rule is for the court of chancery, where an injunction has been dissolved, to go on and assess the damages which the party against whom it is-sued has sustained, and it will accordingly be considered hereafter that practice may be adopted in this court."

In Lehman v. M'Quown, 31 F. 138 (C. C. Colo. 1887), Judge Brewer, at page 140, used the following language:

"As I said, it goes without saying, that the interruption of the possession is a damage; and I think that it is no more than fair that I should take this case, upon this testimony of the situation of the parties, the amount of the property, the time of the interruption of possession, and do just what a jury would probably do."

In Tyler Mining Co. v. Last Chance Mining Co., 90 F. 15 (C. C. A. 9th Circuit, 1898), the court rendered a decision of which the following excerpt from the syllabus is a fair statement of the holding:

"A court of equity, on the dissolution of an injunction, may under its general powers, and in the absence of statutory provisions, have the damages occasioned by its issuance assessed under its own direction, and may render judgment therefor against the sureties as an incident to the principal suit."

In Leslie v. Brown, 90 F. 171 (C. C. A. 6th Circuit, 1898), Judge Taft, then Circuit Judge, speaking for the court at page 174, said:

"It is settled by the cases of Russell v. Farley, 105 U. S. 433 [26 L. Ed. 1060], and

Meyers v. Block, 120 U. S. 207, 7 S. Ct. 525 [30 L. Ed. 642], that the court which grants an injunction, and takes an injunction bond, to save the defendant from loss caused thereby, may, in an ancillary proceeding, summarily enforce this bond against the sureties; but in such a proceeding, at least when the amount of recovery is uncertain, the sureties must have notice and their day in court before the amount of damage is fixed against them."

In Mississippi Valley Fuel Co. v. Watson Coal Co., 202 F. 122 (C. C. A. 7th Circuit, 1912), the following language is used at page 124:

"For such cases the doctrine is well settled, as upheld in the leading authority (Russell v. Farley, 105 U. S. 433, 26 L. Ed. 1060), that federal courts in equity are vested, not only with complete jurisdiction over the parties for all issues arising under the bill, but that jurisdiction thus acquired extends as well for enforcement, in favor of a defendant therein, of any bond which may have been required of and executed by the complainant under an injunctional order for his benefit, and that such jurisdiction for needful relief, if not directly exercisable under the issues, may be exercised by ancillary proceedings, either in equity or on the law side of the court, against both principal and sureties in a bond so executed."

In Baker & Bennett Co. v. N. D. Cass Co., 224 F. 439, 441 (C. C. A. 2d Circuit, 1915), after quoting from the case of Russell v. Farley, supra, the court uses the following language:

"Although the foregoing observations, so far as they apply to the power of the court to dispose of the question of damages under the injunction bond as an incident to the principal case, were obiter, they are entitled to great weight. They were so treated by the Circuit Court of Appeals of the Sixth Circuit in Leslie v. Brown, 90 F. 171, 174, 32 C. C. A. 556, and of the Seventh Circuit in Mississippi Co. v. Watson Co., 202 F. 122, 124, 120 C. C. A. 276. Both courts adopted the law as indicated by Mr. Justice Bradley, and so do we."

In United States Fidelity & Guaranty Co. v. Burke, 238 F. 881 (C. C. A. 9th Circuit, 1917), the court rendered a decision which is epitomized in the following language:

"In a proceeding to foreclose a mortgage on timber land, the court has jurisdiction over the surety on a bond given to prevent injunction against the cutting of timber, and can render judgment against the surety for the deficiency after notice to the surety of appli-

cation for judgment, to the sufficiency of which notice no objection was made in the district court."

In Becker v. Stander, 17 F.(2d) 772 (D. C. La., 1927), Judge Burns has apparently gone still further in holding that the court is empowered to enforce a bond of the character under discussion here in an ancillary proceeding after the dismissal of the original suit by plaintiff. The decision is suggested in the following language found in the syllabus:

"A federal court of equity, which required a complainant to give a bond as a condition of granting an ex parte restraining order, has jurisdiction to enforce the bond for the benefit of defendant in ancillary proceedings, and such jurisdiction is not defeated by a voluntary dismissal of the suit by complainant."

From the foregoing it would appear that all the federal courts, District, Circuit, and Appellate, in the cases at least which are cited by counsel, have been unanimous in adopting the suggestion laid down by the Supreme Court in Russell v. Farley.

■ I see no good reason why the rule should not be adopted here, not only upon the reasoning which would seem to sustain it and which is not necessary to reiterate here, but also upon the ground of expediency and order, with the object in view of seasonably terminating all litigation possible in the same suit.

For the reasons stated, the motion to strike the second counterclaim will be overruled and denied, reserving to the litigants, respectively, their several exceptions to the adverse rulings herein indicated.