BENZ et al. v. COMPANIA NAVIERA HIDALGO, S.A.

MacRAE et al. v. COMPANIA NAVIERA HIDALGO, S.A.

MORRISON et al. v. COMPANIA NAVIERA HIDALGO, S.A.

Nos. 13750 to 13752.

United States Court of Appeals, Ninth Circuit.

June 30, 1953.

Rehearing Denied Aug. 1, 1953.

K. C. Tanner and Richard R. Carney, Portland, Or., for appellants.

Wood, Matthiessen, Wood & Tatum, John D. Mosser and Gunther F. Krause, Portland, Or., for appellee.

Before DENMAN, Chief Judge, ORR and POPE, Circuit Judges.

POPE, Circuit Judge.

These are appeals from interlocutory injunctions issued in three separate suits brought by the appellee, a Panamanian Corporation. It is the owner and operator of the S.S. Riviera, a vessel registered under the Liberian flag. The appellants, defendants in the several actions below, are citizens of the State of Oregon and of states or countries different from that of the plaintiff.

The Riviera arrived at the Port of Portland, Oregon, September 3, 1952. Her crew were all foreign nationals, chiefly Germans and British, who between March and August, 1952, signed British articles agreeing to work on the ship on a voyage from Bremen, Germany, for a period of two years, and agreeing that British maritime board conditions should apply to their wages, hours of employment and working conditions. About September 9, the crew entered upon a strike, in the nature of a sit-down strike, and withheld possession of the vessel from the owners until September 26, 1952, when they were required by an order and decree in admiralty issued out of the district court to leave the vessel. Following October 14, 1952, the Sailors' Union of the Pacific picketed said vessel and the appellee, asserting that the effect of the picketing was to prevent the owner from fitting and equipping the vessel for a prospective trip, brought an action against the appellants in No. 13,750, naming them individually and as representatives of the Sailors' Union of the Pacific, asking temporary and permanent injunctions against the picketing, and for damages. An interlocutory injunction, restraining those appellants during the pendency of the suit from picketing the vessel, was issued November 26, 1952. The appeal in No. 13,750 is from that injunction.

Two days after that injunction was issued, another picket line was established at the vessel by persons purporting to act for Local 90 of the National Organization of Masters, Mates and Pilots. On December 9, 1952, an interlocutory injunction was

issued by the court below in another suit brought by appellee against the appellants in No. 13,751, individually and as the representatives of the members of said Local 90. That action also was predicated upon allegations of diversity of citizenship and sought temporary and permanent injunctions, and relief by way of damages. On the day following that injunction, picketing of the vessel was begun by persons purporting to act for the Seafarers International Union. This was followed by a third action, this time against the appellants in No. 13,752. They were named individually and as representatives of such Seafarers International Union. In that action, which was similar to the others, an interlocutory injunction against the picketing was issued on December 12, 1952. The several appeals above listed are from the several interlocutory injunctions mentioned.

After these several picketing operations had been thus restrained, the Riviera completed its repairs and sailed from Portland, Oregon, on December 23, 1952, with a cargo of wheat pursuant to a charter. It has since completed that charter voyage and unloaded its cargo of wheat at Bombay, India, and is now under charter to carry a cargo of ore from India to Europe via the Suez Canal. Upon conclusion of that voyage the articles under which the vessel has been sailing since March, 1952, will be terminated. The Riviera is a tramp freighter and presently has no charter or commitments for return to any port in the United States. The members of the crew who went on strike at Portland were discharged and all but one of them have left for other places, and their whereabouts is unknown.

Showing these facts by affidavit, the appellee has moved to dismiss these appeals on the ground that the interlocutory injunctions, and the appeals therefrom have become moot. It is said that because of the departure of the vessel nothing remains upon which the injunctions could have any impact, as continued picketing of the vessel is now impossible. We are asked to grant said motion without prejudice to and without passing upon the rights of the parties respecting matters involved in the actions aside from the interlocutory injunctions. The actions insofar as they seek recovery of damages have not been tried and are not affected by these appeals.

On behalf of appellants it is urged that the appeals present important questions, such as the question presented below that these were cases involving or growing out of a labor dispute, and that the court was without jurisdiction to issue an injunction here by reason of the Norris-La Guardia Acts prohibitions against injunctions in such cases. See Title 29 U.S.C.A. §§ 101–114. It is contended that if and when the vessel returns to a port in the United States these appellants will desire to renew their claim of a right to picket the vessel and that their appeals should be determined at this time in order that their rights at such future times may be settled and determined.

■ We are of the opinion that as respects the interlocutory injunctions here involved, such injunctions and these appeals have become moot and that therefore we have no right or occasion to pass upon the merits of these appeals. Newcomb v. United States, 9 Cir., 98 F.2d 25; O'Brien v. Fackenthal, 6 Cir., 284 F. 850. Cf. United States v. Hamburg-American Co., 239 U.S. 466, 475, 36 S.Ct. 212, 60 L.Ed. 387; California v. San Pablo & T. R. Co., 149 U.S. 308, 314, 13 S.Ct. 876, 37 L.Ed. 747. In the Hamburg-American case, supra, it was argued, as here, that the conditions which had made the case moot probably would terminate in the future and that therefore the Court should proceed to decide the controversy and settle the future rights of the parties. The court said: 239 U.S. at page 475, 36 S.Ct. at page 216, "[I]t is urged, in view of the character of the questions and the possibility or probability that, on the cessation of war, the parties will resume or recreate their asserted illegal combination, we should now decide the controversies in order that by operation of the rule to be established any attempt at renewal of or creation of the combination in the future will be rendered impossible. But this merely upon a prophecy as to future conditions invokes the exercise of judicial power not to decide an

existing controversy, but to establish a rule for controlling predicted future conduct, contrary to the elementary principle which was thus stated in California v. San Pablo & Tulare R. R., 149 U.S. 308, 314, 13 S.Ct. 876, 37 L.Ed. 747, 748: 'The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property which are actually controverted in the particular case before it. When, in determining such rights, it becomes necessary to give an opinion upon a question of law, that opinion may have weight as a precedent for future decisions. But the court is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it.' "

Again it is argued that since the appellee is still seeking damages in the court below, its right to recover damages is dependent upon the court having jurisdiction in equity. It is said that unless the equity jurisdiction necessary to support an injunction exists, the court cannot retain the case for the purpose of granting incidental relief by way of damages. We think that inasmuch as the appellee's claim for damages is one which it has the right to prosecute in the court below wholly apart from any claim for an injunction, and since an action for damages alone might have been maintained, appellant is not in a position to assert that we must retain this appeal for the purpose of passing upon the question whether the trial court had the claimed jurisdiction to grant an injunction.

■ We are therefore of the view that these appeals must be dismissed as moot. However, they became moot without any fault of the appellants, and we think that this fact should not operate to prejudice the appellants in their defense of the actions insofar as they relate to a claim for damages. That we may make an order here "most consonant with justice" in adjudging these injunctions moot, we carry that determination to its logical conclusion, namely, that what was determined by the court below in issuing such injunctions is without further force or effect, and can-

not be relied upon as res judicata, as creating an estoppel, or as the law of the case, all to the end that the issues relating to the claim of damages may be tried by the parties as free from the effects of such injunctions, as if the same had not been issued.

The motion to dismiss said appeals as moot is granted.

### On Petition for Rehearing.

Before DENMAN, Chief Judge, and ORR and POPE, Circuit Judges.

### PER CURIAM.

The appellants have petitioned for a rehearing and have included in their contentions the argument that the temporary injunctions and the appeals therefrom did not become moot inasmuch as there remains for determination the question of the appellants' right to damages for the wrongful procuring of such injunctions. Appellants have called attention to that portion of the Norris-La Guardia Act contained in Section 107 of Title 29 U.S.C.A., which requires the furnishing of an undertaking as a condition to the granting of a temporary injunction of the kind therein mentioned.

This aspect of the case was not discussed in the opinion previously filed for the reason that this contention was not made by appellants in their briefs or at the oral argument. At the time of the argument the court made inquiry as to the possibility of the existence of such a claim for damages and was then informed that no bond or other security had been required or furnished in connection with the issuance of the temporary injunctions. Now that this point has been made for the first time upon petition for rehearing, we have again examined the record and we note that it is indeed the fact that no bond or undertaking was furnished at the time of the granting of the temporary injunctions. The trial court found and concluded that these were not cases involving or growing out of labor disputes and that the Norris-La Guardia Act did not apply.

Whether the court's conclusion in that regard was right or wrong was one of the

questions sought to be presented upon an appeal which has now become moot. In like manner it is possible that had such appeal not become moot, appellants might have assigned error in the court's failure to require security under Rule 65(c) Rules of Civil Procedure, 28 U.S.C.A. That also is something which we have no occasion to examine here in view of the fact that the appeals became moot.

And since whether rightly or wrongly no bond or security was furnished, we must apply the rule which prevails in the federal courts. That rule is that in the absence of such a bond, there may be no recovery of damages for the issuance of a temporary injunction even although it may have been granted without just cause. Russell v. Farley, 105 U.S. 433, 437, 26 L. Ed. 1060; Meyers v. Block, 120 U.S. 206, 211, 7 S.Ct. 525, 30 L.Ed. 642; Tenth Ward Road Dist. No. 11 of Avoyelles Parish v. Texas & P. R. Co., 5 Cir., 12 F. 2d 245, 247, 45 A.L.R. 1513, Annotation; Campbell Soup Co. v. Martin, 3 Cir., 202 F.2d 398, footnote on page 399. Cf. International Ladies Garment Workers' Union v. Donnelly Garment Co., 8 Cir., 147 F.2d 246, 253.

The petition for rehearing is denied.