William BENZ et al., Appellants,

v.

COMPANIA NAVIERA HIDALGO, S.A., Appellee.

M. D. MacRAE et al., Appellants,

v.

COMPANIA NAVIERA HIDALGO, S.A., Appellee.

Jeff MORRISON et al., Appellants,

v.

COMPANIA NAVIERA HIDALGO, S.A., Appellee.

Nos. 14663, 14664, 14665.

United States Court of Appeals Ninth Circuit.

April 6, 1956.

Rehearings Denied May 7, 21, 1956.

 

Tanner & Carney, K. C. Tanner, Richard R. Carney, Portland, Or., for appellants.

Wood, Matthiessen, Wood & Tatum, John D. Mosser, Gunther F. Krause, Portland, Or., for appellee.

Before BONE and ORR, Circuit Judges, and MURPHY, District Judge.

MURPHY, District Judge.

These are appeals from judgments awarding damages in three separate suits brought by the appellee, a Panamanian corporation, in the district court. Appellee is the owner and operator of the S. S. Riviera, a vessel of Liberian registry. The appellants, defendants in the several actions below, are citizens of the State of Oregon and of states or countries different from that of the plaintiff. Appellants were sued individually as officers of three voluntary unincorporated labor associations, and also as representatives of classes composed of the members of their respective labor associations.

These cases were before us previously, on appeals from interlocutory injunctions issued against the same appellants to restrain them from picketing appellee's vessel. Benz v. Compania Naviera Hidalgo, S.A., 9 Cir., 1953, 205 F.2d 944. The vessel had sailed before the case came on for hearing and we accordingly dismissed for mootness, returning the case to the district court for trial of the damage claims. We directed that those claims be prosecuted free from the effects of res judicata arising from the injunctions, and generally "as free from the effects of such injunctions, as if the same had not been issued." Id., at page 947.

The basic facts are these: The Riviera arrived at the Port of Portland, Oregon, on September 3, 1952. Her crew were all foreign nationals, chiefly Germans and British, who between March and August, 1952, had signed British articles in Germany, agreeing to work on the ship on a voyage from Bremen, Germany, for a period of two years, and agreeing that British maritime board conditions should apply to their wages, hours of em-

ployment and working conditions. About September 9th, the crew entered upon a strike and refused to leave the vessel. They remained on the vessel and on strike until September 26, 1952, when they were required by an order and decree in admiralty issued out of the district court to leave the ship.

The district court found that the company had lived up to all of its obligations under the articles, that the vessel was seaworthy, and that the purpose of the strike was to secure shorter articles and higher wages than those agreed upon. On October 14, 1952, the Sailors' Union of the Pacific, pursuant to resolution duly passed by its members, took up the picketing of the ship, which had been carried out hitherto by the striking crew itself. From October 14th to November 26, 1952, when it was enjoined from further picketing by the district court, the Sailors' Union of the Pacific picketed the vessel for the purpose, as the district court found, of compelling the company to rehire the striking crew members at higher wages, different conditions, and for shorter articles than those agreed upon.

On November 28, 1952, two days after the injunction against the Sailors' Union of the Pacific was issued, another picket line was established at the vessel by Local 90 of the National Organization of Masters, Mates and Pilots. The district court found that the purpose of the picketing was to enforce the demands of the crew and to assist the Sailors' Union of the Pacific in enforcing the demand of that union that the crew be rehired on the conditions and terms demanded. On December 8, 1952, the National Organization of Masters, Mates and Pilots, Local 90, was enjoined from further picketing.

On December 10, 1952, another picket line was established by the Atlantic and Gulf District, Seafarers' International Union, and maintained until restrained by the district court on December 12, 1952. The district court found that the purpose of the picketing by the Atlantic and Gulf District, Seafarers' Interna-tional Union, was the same as that of the National Organization of Masters, Mates and Pilots, Local 90, that is, to assist the Sailors' Union of the Pacific in enforcing its demand that the striking crew be rehired on different terms than those agreed upon, and to compel the company to meet that demand.

The district court further found that all picketing was at all times peaceful and orderly, that the refusal of shore employees engaged in repair and loading of the vessel to cross the picket lines was directly caused by the picketing of the appellants, and assessed damages in accordance with the number of days' delay caused by each of the appellants respectively.

Appellants' specifications of error, so far as they relate to questions of law, may be grouped under three general categories. It is argued that the district court erred in concluding that (1) it had jurisdiction to try these damage cases, (2) the acts complained of constituted actionable torts under Oregon law, and (3) that these were proper class suits and that the judgments could be enforced against the assets of unincorporated associations.

(1) The district court's jurisdiction is attacked, first, by reason of the Norris-LaGuardia Act's prohibitions against injunctions in labor disputes. See Title 29 U.S.C.A. §§ 101–114. The appeals before us, however, have nothing to do with the injunctions issued by the district court in the previous litigation between the parties at bar. The Norris-La-Guardia Act is not involved in these cases, and is not discussed further.

The district court's jurisdiction is next assailed on the ground that the picketing by the labor associations here involved is within the protection, or alternatively, prohibition of the National Labor Relations Act as amended by the Labor Management Relations Act, 29 U.S.C.A. § 141 et seq.

The district court's jurisdiction derived from 28 U.S.C.A. § 1332(a) (2). In granting a remedy, it was applying

the tort law of Oregon. The question posed, therefore, is whether the reach of the federal labor legislation extends to take exclusive cognizance of the cause, forestalling the exercise of jurisdiction by courts acting as courts of enforcement of state law, and relegating the dispute to the National Labor Relations Board. It may be noted that no party to any of these cases at any time had resort to the Board.

Appellee argues, on the basis of cases holding that the collective bargaining provisions of general labor legislation are not applicable to seamen during the period of valid articles, Southern Steamship Co. v. N.L.R.B., 1942, 316 U.S. 31, 62 S.Ct. 886, 86 L.Ed. 1246; Rees v. U. S., 4 Cir., 1938, 95 F.2d 784; Peninsular & Occidental Steamship Co. v. N.L.R.B., 5 Cir., 1938, 98 F.2d 411, that the picketing here undertaken by the labor associations to enforce the demands of a crew of a vessel in violation of their articles is not within the scope of the conduct regulated by the National Labor Relations Act, as amended. Appellee argues further that, regardless of the applicability of general American labor legislation to American maritime labor disputes, Congress did not intend to subject this dispute to the National Labor Relations Act, as amended. This is a dispute between a foreign employer and a foreign crew having signed foreign articles in a foreign port to serve on a foreign ship. The sole points of contact with America in this case are the eruption of the dispute in an American port, and the participation of American labor associations in the dispute by means of picketing.

It may well be that American laws should not be construed to apply, without some more explicit Congressional indication than we are able to find in the National Labor Relations Act, as amended, to situations with as many points of foreign contact as the situation at bar. Cf. Lauritzen v. Larsen, 1953, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254. (Applicability of Jones Act, 46 U.S.C.A. § 688, to foreign seamen injured on for-

eign vessel. See especially the discussion of Mr. Justice Jackson, for the Court, 345 U.S. at page 581 et seq., 73 S.Ct. 921.) The National Labor Relations Board, furthermore, seems to have taken the position that it has no jurisdiction to determine the collective bargaining agent for the crew of a foreign vessel. Sailors' Union of the Pacific, Case No. 20, R.C. 809, C.C.H. Labor Reports, 1950–51, N.L.R.B. Decisions, Par. 1,081, May 1, 1950.

However, it does not seem to us necessary to decide the question whether and to what extent the National Labor Relations Act, as amended, would extend to the controversy before us. The narrow question before us is not whether the National Labor Relations Act, as amended, applies to this dispute at all, but whether it has pre-empted the field so completely as to bar Oregon from giving a remedy by means of an action in tort for the damage done by the picketing here involved. That question seems to us decisively settled by the Supreme Court in United Construction Workers v. Laburnum Construction Co., 1954, 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025. In that case, damages were sought in a state court for harm done by picketing, including harm done by violent picketing. The Court said, with respect to the union's argument there:

"They claim that state courts accordingly are excluded not only from enjoining future unfair labor practices and thus colliding with the Board, as occurred in Garner v. Teamster's Union, 346 U.S. 485, 74 S.Ct. 161 [98 L.Ed. 228], but that state courts are excluded also from entertaining common-law tort actions for the recovery of damages caused by such conduct. The latter exclusion is the issue here. In the Garner case, Congress had provided a federal administrative remedy, supplemented by judicial procedure for its enforcement, with which the state injunctive procedure conflicted. Here Congress has neither provided nor suggested any substitute for

the traditional state court procedure for collecting damages for injuries caused by tortious conduct." 347 U.S. at page 664, 74 S.Ct. at page 837.

The Court went on to affirm the award of damages in the state court. The Laburnum case thus established as the test of concurrent state jurisdiction, the lack of a substantially similar remedy in the federal scheme of regulation of labor disputes.

The remedy sought in the cases before us is damages. No such remedy exists under the federal law for this fact situation. This is not a secondary boycott or a case of an award of back-pay to reinstated employees where money damages may be recovered under federal law. See Laburnum, supra, 347 U.S. at page 665, 74 S.Ct. 833. Under the test enunciated in the Laburnum case, therefore, the state courts of Oregon, and the federal district court sitting in a diversity case, clearly have jurisdiction of a common law tort action for damages done by unlawful picketing. Appellants urge upon us the distinction that in the Laburnum case the picketing itself was unlawful in the sense that the means used were violent, whereas in the instant case, the means of picketing were peaceful, but the end unlawful. This distinction might have been argued before the Laburnum decision. See Cox, Federalism in Labor Law, 67 Harv.L.Rev. 1297, 1327 (1954). And an argument much to the same effect was made in the dissenting opinion in the Laburnum case. See 347 U.S. 656, at pages 669–670, 74 S.Ct. 833. But nothing in the opinion of the Court in Laburnum suggests an acceptance of that argument, or an intent to restrict its effect to cases of violent picketing, or other tortious means as distinguished from ends. The Court said in that case, 347 U.S. at page 669, 74 S.Ct. at page 840:

"If Virginia is denied jurisdiction in this case, it will mean that where the federal preventive administrative procedures are impotent or inadequate, the offenders, by coercion of the type found here, may destroy property without liability for the damage done."

A business may be damaged or destroyed by peaceful picketing as well as by violent picketing. We think that Laburnum covers wrongful ends as well as wrongful means.

Appellants have cited Local Union No. 25, of International Brotherhood of Teamsters, etc. v. N. Y., New Haven & Hartford, 350 U.S. 155, 76 S.Ct. 227, 230. But the Supreme Court there granted certiorari only to determine "whether the state court had jurisdiction to enjoin the petitioners' conduct", and not whether the state could grant tort damages after the harmful conduct had occurred. Nothing in that case modifies the rule of the Laburnum case as here applied.

(2) The second category of specifications of error relates to the district court's conclusion that the picketing here involved was for an unlawful purpose and therefore an actionable tort under the law of Oregon. Appellants argue that under the law of Oregon picketing is for an unlawful purpose only when it has for its object the commission by an employer of an illegal act in the sense of a violation of law, not merely an act which is held to be against the public policy of the state.

We have examined the cases cited by both briefs and find nothing in them to negative the district court's conclusion that picketing for the purpose of requiring a shipowner to rehire seamen who had struck in violation of their articles is picketing for an unlawful purpose under the law of Oregon. E. g., see Schwab v. Moving Picture Machine Operators, Local No. 159, 1941, 165 Or. 602, 109 P.2d 600.

Appellants also argue that the damage awards deprived them of their right to free speech; that the refusal of the shore employees to cross appellants' picket lines is wrongful conduct on the part of the shore employees and therefore not to be attributed to the appellants' actions; and that the appellee could not

have been damaged during the period of the picketing because it did not have the custody of the vessel for the idleness of which it claimed damages. We do not feel it necessary, after a reading of the record, to discuss these arguments, except to say that they are unfounded.

■ (3) The third category of specifications of error relates to the propriety of the class suit and the form of the judgment in each of the three cases. The suits were brought against the officers of the labor associations individually and as representatives of the members of the respective associations. So far as these suits are class suits, they were properly brought under Fed.R.Civ.P. 23(a) (1), 28 U.S.C.A. The propriety of class suits to sue members of labor unions where those unions may not be sued as separate entities is too well established to require the citation of authority here. Appellants' argument that the members of the unions did not have sufficiently identical interests to constitute them classes subject to class suits, by reason of the fact that they were not all engaged in the off-shore grain trade, lacks substance. We find no error in permitting the suits as class suits.

The district court entered final decrees against the individual officers served, the members of the associations they respectively represented, as a class, and also against the labor associations as separate entities, directing further that execution be had against the personal assets of the individuals served in the actions, and against the assets of the associations, but not against the personal assets of individuals not served. Appellants specify as error the judgments against the associations and the order to enforce these judgments against their assets.

■■ Rule 17(b) of the Fed.R.Civ.P. provides that the capacity of an unincorporated association to sue and be sued should be determined by the law of the state in which the district court is held, unless the cause of action arises under federal laws. The cause of action here

arises under the laws of Oregon. It is conceded that Oregon follows the common law rule that unincorporated associations, like partnerships, may not be sued in their own names. Cousin v. Taylor, 1925, 115 Or. 472, 239 P. 96, 41 A.L.R. 750; Restatement, Judgments, sec. 24, Comment (a).

The question presented, therefore, is whether under Oregon law, although unincorporated associations may not be sued in their names, judgment against their members as classes may nevertheless be enforced against the assets of the associations. At common law, the nature of tort liability was that of the members severally. See Sperry Products, Inc. v. Association of American Railroads, 2 Cir., 1942, 132 F.2d 408, 145 A.L.R. 694, Opinion of Judge L. Hand, at page 410. And it was the undoubted proposition that the several liabilities of the members could not be enforced against the assets of the unincorporated associations that led to the adoption of the rule, for the federal courts, of United Mine Workers v. Coronado Coal Co., 1922, 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, in which Chief Justice Taft said:

"* * * we think that such organizations are suable in the federal courts for their acts, and that funds accumulated to be expended in conducting strikes are subject to execution in suits for torts committed by such unions in strikes." Id. 259 U.S. at page 391, 42 S.Ct. at page 576.

The Coronado rule was an undoubted modification of the common law as it had developed up to that time. Subsequent to the decision of Coronado, the Supreme Court of Oregon decided Cousin v. Taylor, 1925, 115 Or. 472, 239 P. 96, in which it assumed, as a ground supporting its decision holding the officers of an unincorporated association subject to a suit, that the association itself could not be liable. And as recently as 1953, the Supreme Court of Oregon affirmed that it had "not as yet adopted the rule of the Coronado case * * *." See Lonsford v. Burton, 200 Or. 497, at pages 511–512,

267 P.2d 208, 215. The Lonsford case itself concerned the sufficiency of identity of interest of plaintiffs with other alleged members of a class, so as to entitle plaintiffs to sue as representatives of a class. The Court's dictum there does not suggest that it has modified the common law rule so as to enable appellee here to enforce *its* judgments against the assets of the associations. Nor do any other cases in the Oregon courts cited to us suggest any such modification. Appellee cites Brotherhood of Locomotive Firemen, etc. v. Tunstall, 4 Cir., 1947, 163 F.2d 289. That cause of action arose under federal law and is not apposite to the question before us. The Restatement of Judgments, sec. 78, says:

"Comment: (c) * * * In States in which suit can be maintained against an unincorporated association in its business name, judgment can be rendered which is valid against the assets of the association * * *"

At present, Oregon is not a state in which suit can be maintained against an unincorporated association. It may be that the courts of Oregon will adopt the rule of the Coronado case in time, or that the legislature of that State will enact legislation to that effect, but it is not for the federal courts to modify the common law of the State of Oregon. So much of the final decrees in the three cases, therefore, as grant judgment against the unincorporated associations as such and permit execution against their assets, are reversed. The remainders of the three decrees are affirmed. The cases are remanded for entry of decrees consistent with this opinion.

On Appellee's Petition for Rehearing

This is appellee's petition for rehearing.

Appellant's petition for rehearing was denied on May 7, 1956. No issues are presented in appellee's petition which were not heretofore considered by this Court.

It is only the very able opinion of the trial court, urged upon us by the appellee with respect to his chief contention, that prompts us to make further brief comment. Appellee, conceding that the courts of Oregon have not yet adopted the *Coronado* [1] rule, (allowing suits of unincorporated associations as separate entities and execution of judgments against their assets) now argues that the common law distinction between class suits against the members of an association and suits against the associations themselves is a matter of "semantics, not substance." The judgment and order entered below restricted the execution of the judgments to the assets of members of the class served in the action, thus preserving the rights of other members of the class to make their usual defenses, if any, before judgment may be had against them personally and execution may be had against their personal assets. If the assets of the union are indeed the property of the members, to allow execution against those assets would be to allow execution against the assets of persons not served in the action. Plainly, it is because there is this real difference between the remedies of suit against the members as a class and suit against the association itself, that the *Coronado* rule was adopted in the federal courts, and that appellee now seeks to have this Court subsume under the heading of "semantics" the difference between that rule and the one obtaining in the State of Oregon.

The petition for rehearing is denied.

1. United Mine Workers v. Coronado Coal Co., 1922, 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975.