In the Matter of J. D. JEWELL, INC., Bankrupt.

Hugh C. HUNTER, Larry D. McClure, Jr., James L. Moye and Joseph Giordano, Appellants,

v.

Robert E. HICKS, Trustee, Appellee.

No. 76–3276.

United States Court of Appeals, Fifth Circuit.

April 21, 1978.

---

Sam S. Harben, Jr., Edmund A. Waller, Gainesville, Ga., for appellants.

Charles E. Campbell, Atlanta, Ga., for appellee.

Before TUTTLE and CLARK, Circuit Judges, and EDENFIELD,* District Judge:

TUTTLE, Senior Circuit Judge:

This is an appeal from an order of the United States District Court, affirming an order of the bankruptcy judge, which required the appellants to make a payment of $20,000 together with interest for some three years because of the manner in which they dealt with a contest over the title to property in the bankrupt's estate.

Prior to bankruptcy, the appellants entered into a contract with the debtor, J. D. Jewell, Inc., under which they were to acquire title to certain real estate owned by Jewell. Subsequently, after bankruptcy, the bankruptcy court entered an order recommending sale of the real estate in accordance with the contract, and, upon approval by the district court, a warranty deed for some 1200 acres of property was given to appellants. The deed recites the fact that it was "executed by authority of the order of the Honorable Sidney O. Smith, Jr., United States District Judge, in the matter of J. D. Jewell, Inc., debtor, Case No. 2052, United States District Court for the Northern District of Georgia, Gainesville Division, dated December 7, 1972." In turn, Judge Smith's order approving the sale of the real estate provides in part as follows: "The trustee is hereby authorized to proceed to close the sale of the property referred to in the said contract

---

* Honorable Newell Edenfield, United States District Judge for the Northern District of Georgia, sitting by designation.

upon terms and conditions set forth therein."

Also included in the sales contract, and thus made part of the warranty deed, is the following special stipulation:

J. D. Jewell, Inc., shall have the exclusive use of rendering plant, oxidation ponds, located on Tract 3 consisting of 52.1 acres, together with the shops used in connection with operation of the rendering plant, without costs for twelve full months from date of closing and then six additional months thereafter to clear site of all buildings and debris. J. D. Jewell, Inc., will pay all property tax and tax on improvements on said 52.1 acres and shall provide adequate liability insurance for this eighteen months period and hold purchaser harmless for any and all liabilities during this period arising out of the operation of said rendering plant by J. D. Jewell, Inc.

The land conveyed by the warranty deed was situated some miles away from the principal processing plant of the bankrupt. The parties are in agreement that there was a "rendering plant" on the 52.1 acres referred to above. There was also a sewage disposal system. Although before bankruptcy the Jewell operation used the rendering plant to process the inedible parts of slaughtered chickens, the trustee apparently determined to abandon this use of the plant in connection with the more limited operation carried on by the trustee. Thereupon, he offered the rendering plant, including (as he says) the sewage disposal plant, for sale. Upon consideration of the bids, it appeared to the trustee and the bankruptcy court that these items could be sold more profitably separately. Thereupon, a bid was taken for the sewage disposal plant. A firm offer accompanied by a cash tender of $20,000 was made by Rothsay Concentrate Co., Ltd. Just prior to the approval of this proposed sale by the bankruptcy judge, the appellants filed a "motion" setting out the fact that they had acquired the land upon which the sewage disposal plant was situated by warranty deed and that the trustee in bankruptcy was "attempting to sell certain aerators and sewage disposal equipment, piping, pumps, lines and structures and other equipment situate on the property described in said warranty deed, all of which are fixtures attached to the realty and which were conveyed by said described warranty deed and which belong to movants." Movants then prayed that the bankruptcy court "disallow any sale of any of said equipment, aerators and sewage disposal equipment by the trustee, . . . reject any bids submitted for the purchase of said equipment as being fixtures of the realty owned by movants and . . . decree title to all of the sewerage disposal equipment in movants."

Although the bankruptcy court could simply have refused to approve the sale pending a determination of the title to these items of property, it entered an injunction against the prospective purchaser, Rothsay Concentrate Co., Ltd., in the following language:

Thereupon on the basis of the allegations as represented by the parties, the court enjoined and does now hereby enjoin Rothsay Concentrate Company, Ltd., its agent, servants and employees from any acts or interference with the property in question which shall remain in the possession of the Trustee pending further order. As a condition to the issuance of this injunction, the movants are ordered to post security indemnifying the Trustee and estate from any loss occasioned by the bringing of such petition. The determination of the amount and form of such bond and security therein is hereby referred to Bankruptcy Judge W. Homer Drake, Jr. for prompt hearing and recommendation to the court; likewise, the merits of the petition to enjoin are also referred for hearing and recommendation to the court.[1]

---

1. It will be especially noted here that the movants did not request an injunction, but, in effect, merely noted their objection to the sale on the ground that the trustee no longer had title to this property.

After this order of October 26, 1973, the bankruptcy judge set a hearing for November 8 for consideration of the matter of the bond. However, upon being notified that counsel for movants was otherwise engaged, and after receiving no objection from the trustee, he rescheduled the hearing for March 13, 1975.[2] On this date, appellants filed a motion asking to be relieved of the posting of any bond indemnifying the trustee because they had discovered that all of the valuable portions of the sewage disposal plant had been stolen or destroyed while still in the possession of the trustee and that there was no longer in existence any equipment or property of any value to appellants. Appellants also objected to the form of the bond.

After satisfying itself that the "rendering plant" incorporated the sewage disposal plant, and thus fell within the provisions of clause 13 of the special stipulations of the contract, *supra,* the court entered an order on March 17 which provided:

> After hearing the Trustee and counsel, the Court finds it is undisputed that the bid of Rothsay Concentrate Company, Ltd. of $20,000 cash was real and that had movants not brought the subject motion, the estate would have realized $20,000 cash from sale of subject property. Therefore, movants are
>
> Ordered to post bond in the form heretofore approved in the penal sum of $20,000 immediately, with sureties approved as provided by law. All other issues related to this matter are expressly reserved, including what action, if any, is required regarding violation of this Court's injunction against suits against this estate or its Trustee.

Upon appellants' appeal of this order, the district court approved the form and amount of the bond and entered the following order: "Therefore, the appellants are directed to post a security bond in the sum of $20,000 cash within 10 days of the date of this order. Failure to do so will result in dissolution of the injunction." This order was entered on August 15, 1975. Thereafter, the case reappeared again before the bankruptcy judge on a motion by the trustee to decree title in the trustee on the merits of the controversy and to require appellants to show cause why judgment should not be entered against them "requiring restoration to the debtor's estate of the value of $20,000 plus interest and expenses." The bankruptcy judge found that the Rothsay Concentrates Co., Ltd. was ready, able and willing to buy and was prevented from doing so "by the injunction of Judge Smith" and that the estate was deprived of $20,000 "by reason of the action of Hunter, et al. in seeking the injunction and in failing to post bond as directed by this court." Accordingly, appellants were ordered to pay "jointly and severally to the said Robert E. Hicks, Trustee, the sum of $20,000 plus interest." The order then says: "The court further finds that the conduct of Hunter, et al. in violating the injunction of October 20, 1972 may be purged upon payment of said $20,000 plus interest since this will restore to the estate the 'loss occasioned by the bringing of such motion.'"[3] The district court affirmed the foregoing order of the bankruptcy judge, and the appeal was taken from that judgment.

Appellants make three major contentions. The first is that the trial court properly intervened to prevent the sale of the sew-

---

2. This delay was in part due, no doubt, to the fact that the appellants filed a suit in the Georgia State Court against the trustee, seeking to have their title to the disputed property resolved there. This action was subsequently dismissed on the motion of the trustee for summary judgment. Since no formal procedures were commenced to hold the appellants in contempt of court for the filing of the state court action against the trustee, we conclude that this matter dropped out of the case completely. See Bankruptcy Rule 920.

3. This language apparently refers to the filing of the state court lawsuit against the trustee in violation of an injunction presumably issued by the bankruptcy court upon the filing of the petition, a matter not documented in the record before us, but apparently undisputed by the parties. Since no proceedings against the appellants for contempt were initiated, see n. 2, *supra,* the idea of "purging" adds nothing to the posture of the case as it comes to us on appeal.

age disposal plant, which appellants say already belonged to them under the deed, and that they should therefore prevail on the merits on the issuing of the "injunction." The second is that no valid injunction ever issued either by order of the bankruptcy judge or in the district court, because by the language of the order itself the injunction was conditioned upon the making of the $20,000 bond, and the condition was never met. The third contention by appellants is that even if they were to be compelled to respond to the trustee on the same basis as if the bond had actually been executed, no recovery was proper, since the loss to the trustee occurred from the destruction or theft of the property and not by virtue of the issuing of the injunction. Finally, they say that there is no liability on their part to the trustee because no bond was executed, and they are not liable for damages for even an improvident issuing of an injunction.

The parties do not seriously contest the Georgia law with respect to "fixtures." There can be little doubt but that our consideration of this issue starts with the provision of the Georgia Code, § 85–105, which provides:

Any thing intended to remain permanently in its place, though not actually attached to the land, such as a rail fence, is a part of the realty and passes with it.

Both parties argue that the case is controlled by *Power v. Garrison,* 141 Ga. 429, 81 S.E. 225 (1914) which says:

In a conveyance of land in fee, machinery attached thereto will ordinarily pass as part of the realty. But where it is intended otherwise by the parties, and they enter into a written contract *expressly reserving* to the seller the machinery, with the right to remove the same, such agreement will be given effect. [emphasis added]

The initial disagreement involves the question whether the language of special stipulation 13 that Jewell "shall have the exclusive use of rendering plant, oxidation ponds, . . . for twelve full months from date of closing and then six additional months thereafter to clear site of all buildings and debris" amounts to an express reservation of the property here under consideration—the sewage disposal plant. Courts might disagree as to whether the 18-month reservation for use, together with the language dealing with "clear[ing the] site of all buildings and debris," is an *express* reservation of *title* as contemplated under the Georgia law. So, too, it may be doubtful whether the testimony of a person not participating in the execution of the contract is admissible to prove that the term "rendering plant" comprehended the "sewage disposal facility." Fortuitously, a solution of that problem may never be required, since the sewage disposal facilities are no longer in existence and the correctness of the judgment appealed from can be resolved on different grounds.

The Federal Rules of Civil Procedure require that no preliminary injunction shall issue "except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed.R.Civ.P. 65.

There are several peculiar things about the security bond matter in this case. The first of these is that the appellants, the vendees of the land which physically incorporated the disputed fixtures,[4] made no request for an injunction. They merely filed a motion in the bankruptcy court, requesting that the bankruptcy judge decline to approve a sale of the fixtures because, the movants alleged, that they already belonged to them as purchasers of the land.

The second unusual circumstance is that while the rule requires that security be given for the payment of such costs as may be incurred or suffered by a party who is found to have been "wrongfully enjoined," here the bond proposed by the trustee and

---

4. In this opinion we use the term "fixtures" as a general term and not in the sense that they either were or were not determined to be "trade fixtures."

approved by the bankruptcy court and the trial court named the trustee of the bankrupt's estate as the obligee in this bond, and he was at no time enjoined, either rightfully or wrongfully. The injunction ran only against the party which offered to purchase the fixtures in the bankruptcy court. Moreover, the judgment entered by the bankruptcy court and affirmed by the trial judge is a judgment in favor of the trustee, who, since he was not enjoined, is not a proper party entitled to security under the rules. So far as appears in this record, the only party "wrongfully enjoined" has never complained to the trial court.

The third unusual circumstance is that the trial court in its injunctive order against the purchasers stated that the posting of security, later described by the court as "such bond and security," was a condition to the issuance of the injunction. The trial court stated: "As a condition to the issuance of this injunction, the movants are ordered to post security indemnifying the trustee and the state from any loss occasioned by the bringing of such petition." [5] No such bond was ever posted.

In some way, the option open to the appellants to perfect the court's injunction in their favor by posting bond in an amount to be fixed by the bankruptcy judge was, during the life of the controversy, changed into what the bankruptcy court and the trial judge seemed to consider an absolute obligation to execute the bond. As we have pointed out above, the bankruptcy court could initially have merely entered an order disallowing the sale pending a resolution of the question of title. That, in fact, is precisely what the appellants requested from the district court. Instead, the court issued an injunction against the potential purchaser. Since the movants did not request the injunction, it is difficult indeed to decide that they were absolutely legally bound to

give the bond (initially demanded in the sum of $50,000 by the trustee) whether or not they wished to enforce the injunction. It may be that the sale was frustrated by the conditional order entered by Judge Smith. This did not, however, place the movants in a position in which they became liable to respond as if a bond had been given. It must be remembered that no bond has at any time been executed.

We need not decide precisely whether, without the execution of a bond, the injunctive order conditionally announced by the district court was ever a valid binding injunction.[6] The simpler and plainer rule of law is that unless a bond has been executed upon the granting of an injunction, the person enjoined can have no recovery against the moving party. This court has held as much in *Tenth Ward Road District No. 11 v. Texas & Pacific Ry. Co.,* 12 F.2d 245 (5th Cir. 1926). In that case, speaking of an appellant who had successfully obtained a recovery against a plaintiff whose injunction had later been set aside, we said:

> Without a bond, appellant could recover only costs, unless it could make out a case of malicious prosecution. In the case of *Meyers v. Block,* . . . 120 U.S. 206, 211, [7 S.Ct. 525, 528, 30 L.Ed. 642] . . . the Supreme Court said: "By the law of Louisiana, damages may be recovered for suing out an injunction without just cause, independently of a bond. [*Florance v. Nixon*] 3 La. 291. But this cannot be done in the United States courts. Without a bond no damages can be recovered at all. Without a bond . . . or other obligation of like effect, a party against whom an injunction wrongfully issues can recover nothing but costs, unless he can make out a case of malicious prosecution."

---

5. It is not clear, and we need not determine, whether a bond indemnifying someone other than a person "enjoined" is properly authorized by the rule.

6. While dealing with a question of appealability of an injunction, this court stated in *United*

*States v. Associated Air Transport, Inc.,* 256 F.2d 857 (5th Cir. 1958): "We agree with it, too, that until the bonds were filed, the order by its own terms was conditional and without operative effect." *Id.* at 861.

*Id.* at 247. The Court of Appeals for the Ninth Circuit has held similarly in *Benz v. Compania Naviera Hidalgo, S. A.,* 205 F.2d 944 (9th Cir. 1953).

■ Here, the bankruptcy court, affirmed by the district court, entered a final judgment against the appellants in the penal sum of the bond which the court had required them to execute if the injunction was to subsist. The trial court felt, incorrectly we think, that the appellants were under an absolute requirement to execute the bond, rather than to exercise their option to let the injunction lapse by not doing so. The court, therefore, seems to have exacted a penalty in the same amount as it felt would be applicable if the bond had been executed. The Court of Appeals for the Ninth Circuit in *Benz* gave the correct answer to this situation:

> And since whether rightly or wrongly no bond or security was furnished, we must apply the rule which prevails in the federal courts. That rule is that in the absence of such a bond, there may be no recovery of damages for the issuance of a temporary injunction even although it may have been granted without just cause. *Russell v. Farley,* 105 U.S. 433, 437, 26 L.Ed. 1060; *Meyers v. Block,* 120 U.S. 206, 211, 7 S.Ct. 525, 30 L.Ed. 642; *Tenth Ward Road Dist. No. 11 of Avoyelles Parish v. Texas & P. R. Co.,* 5 Cir., 12 F.2d 245, 247, 45 A.L.R. 1513, Annotation; *Campbell Soup Co. v. Martin,* 3 Cir., 202 F.2d 398, footnote on page 399. Cf. *International Ladies Garment Workers' Union v. Donnelly Garment Co.,* 8 Cir., 147 F.2d 246, 253.

205 F.2d at 948.

There is one further matter that deserves consideration on this appeal. That is the question whether the injunctive order against the closing of the sale or the subsequent destruction of the property while it was still within the custody and control of the trustee was the cause of the damages suffered by the trustee. While it is clear that had the sale gone to completion on the date of the first hearing, the trustee would have received $20,000 for the property, it is far from clear that his failure to receive this amount caused his loss of the value of the sewage disposal plant. The record is silent as to when the property was removed from the land, and the court may not speculate that even a slight delay between the time of the issuance of the injunctive order and the failure of the appellants to execute a bond would have caused total loss of these fixtures. In any event, the trustee retained possession of the fixtures with some degree of responsibility for their safe keeping. The fact that they were subsequently lost cannot, we conclude, be attributed to the court's directing that the sale not take place on the particular date set for the transaction.

The judgment ordering the payment by appellants to the trustee of the sum of $20,000, together with interest, is REVERSED.