**EMERALD PARTNERS, a New Jersey Limited Partnership, Plaintiff,**

v.

**Ronald P. BERLIN, David L. Florence, Rex A. Sebastian, Theodore H. Strauss and Hall Financial Group Inc. (formerly May Petroleum Inc.), a Corporation of the State of Delaware, Defendants.**

**C.A. No. 9700.**

Court of Chancery of Delaware, New Castle County.

Submitted: Sept. 24, 1997.
Decided: Dec. 29, 1997.

---

Gregory V. Varallo, Daniel A. Dreisbach, Raymond J. DiCamillo, and Russell C. Silberglied of Richards, Layton & Finger, Wilmington, for Plaintiff.

Edward M. McNally, Lewis H. Lazarus, and Joseph C. Schoell of Morris, James, Hitchens & Williams, Wilmington, for Individual Defendants.

Vernon R. Proctor of Bayard, Handelman & Murdoch, P.A., Wilmington, for Corporate Defendant.

## OPINION

STEELE, Vice Chancellor.

Pending is defendants' motion to recover damages occasioned by this Court's grant of a preliminary injunction, later vacated by the Supreme Court, which had the effect of postponing a merger for five months. I find that defendants may recover provable damages up to the value of the substituted security posted by plaintiff.

### Background

Emerald Partners ("Emerald") filed this action against May Petroleum, Inc. ("May"), now Hall Financial Group, Inc. ("HFG"), and its directors (collectively, "defendants") to enjoin a merger between May and thirteen corporations owned by Craig Hall ("the Hall Corporations"). On March 16, 1988, this Court granted Emerald's Motion for Preliminary Injunction, which prevented the consummation of the merger. This Court required Emerald to post a cash or secured bond in the amount of $500,000 as security, pursuant to Chancery Court Rule 65(c). That rule states, in pertinent part:

No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the Court deems proper, for the payment

of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

Emerald posted a cash bond in the amount of $500,000 on March 21, 1988. Three days later, this Court, with defendants' approval, allowed Emerald to substitute a $500,000 irrevocable letter of credit for the cash bond. Defendants filed an interlocutory appeal, and the Supreme Court reversed this Court's decision enjoining the merger and vacated the preliminary injunction by Order dated August 15, 1988. The merger was consummated the same day. On March 12, 1992, this Court, with defendants' approval, allowed Emerald to substitute 320,000 shares of HFG common stock for the $500,000 letter of credit.

## Contentions of the Parties

Defendants filed a Motion to Recover Against the Substituted Security on March 4, 1994. Defendants argued that because they had been "wrongfully enjoined" from consummating the merger for five months, they were entitled to make a claim for damages against the security. This Court held defendants' Motion in abeyance until their pending Motion for Summary Judgment was resolved. The Summary Judgment motion was resolved in defendants' favor, and the sole issue remaining in the case is whether and to what extent defendants should be allowed to recover damages. Defendants re-noticed their Motion to Recover and requested that this Court grant damages against Emerald "in the amount of $500,000, together with the Substituted Collateral...."[1] Later, defendants altered their request for relief, asking

instead for an award of "$500,000 in compensatory damages, plus interest...."[2]

Emerald contends that defendants are not entitled to recover any damages at all because they were not "wrongfully enjoined or restrained" under Rule 65(c). Emerald argues that the term "wrongful" is not defined as the mere dissolution of the injunction at a later date. Instead, Emerald contends that an injunction issues "wrongfully" only if the party seeking the injunction "has made any false statement or suppressed evidence."[3] In the alternative, Emerald argues that this Court can and should exercise its discretion as a court of equity to deny recovery. Finally, Emerald contends that, to the extent defendants are able to prove any damages at all as a result of the injunction, they may recover only up to the value of the substituted security and not up to the amount of the original bond. The parties agree that the value of the 320,000 shares of HFG common, which were cashed out at $0.31 per share, is $99,200.[4]

## Discussion

▮▮▮ No court in the State of Delaware has defined the phrase "wrongfully enjoined or restrained," as it is used in Rule 65(c). That a temporary restraining order or preliminary injunction might issue "improvidently" or "incorrectly" seems to be a risk inherent in the enterprise, as these remedies are granted before the trial court has the benefit of considering a fully-developed factual record. Even so, restraining orders and preliminary injunctions are considered "extraordinary remedies," and they may be granted only after a trial court has made explicit findings in accordance with strict standards.[5]

1. Defendants' Opening Brief in Support of their Joint Motion to Recover Against Substituted Security at 7.

2. Defendants' Joint Reply Brief in Support of their Motion to Recover Against Substituted Security at 22 (hereinafter "Def.'s Repl. Brf.").

3. Plaintiff's Answering Brief in Opposition to Defendants' Motion to Recover Against Substituted Security at 16 (hereinafter "Pl.'s Ansr. Brf."). Emerald found some support for such an interpretation in the common law of England. *Smith v. Day,* 21 Ch. D. 421, 424–25 (1882)(explaining that damages should be awarded for an injunc-

tion wrongly granted owing to the false statement or omission of the plaintiff, but that damages should not be recoverable for an injunction wrongly granted owing to a mistake of the court).

4. Def.'s Repl. Brf. at 25; Pl.'s Ansr. Brf. at 21.

5. A temporary restraining order may not issue unless the plaintiff shows a risk of "imminent, irreparable injury." *Cottle v. Carr,* Del. Ch., C.A. No. 9612, slip. op. at 6, Allen, C., 1988 WL 10415, (Feb. 9 1988). A preliminary injunction may not issue unless the plaintiff shows that (1) he has a reasonable likelihood of ultimate suc-

Therefore, to my mind the term "wrongful" connotes something more sinister than the "improvident" or "mistaken" grant of injunctive relief. Webster's Dictionary defines "wrongful" as unjust, having no legal sanction or illegitimate.[6] Thus, as Emerald suggests, an injunction granted as a result of the plaintiff's bad faith, deceit or fraud would be "wrongful." However, an injunction would not be considered "wrongful," although it later be vacated or dissolved for whatever reason, if at the time it was granted the trial court's assessment that the prerequisites for granting injunctive relief had been met was not an abuse of discretion.

This construction, no matter how attractive to a court founded under principles of English law, would run contrary to the great weight of American authority on the issue. Court of Chancery Rule 65(c) is worded identically to its federal counterpart, Federal Rule of Civil Procedure 65(c). The federal courts have had many occasions to construe the term "wrongfully" as it is used in the federal Rule. Where a rule of the Court of Chancery or the Superior Court is modeled upon a federal rule, the Delaware rule has been construed in accordance with the persuasive authority of the federal courts.[7]

The federal courts have determined that the reversal of an injunction is enough to label its grant "wrongful." The United States Court of Appeals for the Sixth Circuit has stated:

> The federal courts of appeals have consistently held that the reversal on appeal of an injunction is tantamount to finding that the enjoined party was "wrongfully enjoined or restrained," and that such reversal triggers the wrongfully enjoined party's right to pursue recovery on the security bond.[8]

The Second Circuit defines an injunction as "wrongful" if "it is ultimately found that the enjoined party had at all times the right to do the enjoined act."[9] As the Second Circuit noted, this does not necessarily suggest that the trial court abused its discretion in granting injunctive relief: " '[A] temporary injunction may be wrongfully issued although its issuance may not have been improvident as an abusive exercise of the trial court's discretion.' "[10] In fact, the propriety of a grant of injunctive relief need not even be assessed on its merits; an injunction may be termed "wrongful," for example, if "the case is ultimately dismissed with prejudice, whether it be voluntarily ... or for jurisdictional grounds,"[11] or if "the procedure leading to a TRO or preliminary injunction is later found to have violated Rule 65(a) or 65(b)."[12]

cess on the merits, (2) he will suffer irreparable injury if the requested relief is denied, and (3) the injury to the defendant or others if the requested relief is granted is less than the injury from which the plaintiff seeks protection. *Fitzgerald v. Reardon,* Del. Ch., 576 A.2d 183, 184–85 (1990).

6. MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1368 (10th ed.1993). The complete definition is: "1: Wrong, Unjust 2 a: having no legal sanction: Unlawful b: Illegitimate."

7. *Mann v. Oppenheimer & Co.,* Del.Supr., 517 A.2d 1056, 1061 (1986); *Dieter v. Prime Computer, Inc.,* Del. Ch., 681 A.2d 1068, 1075 n. 10 (1996) (citing *Nottingham Partners v. Dana,* Del. Supr., 564 A.2d 1089, 1094 (1989)).

8. *See, e.g., Detroit Bhd. of Locomotive Eng'rs v. Consolidated Rail Corp.,* 844 F.2d 1218, 1225 (6th Cir.1988) (status quo injunction vacated, therefore, "wrongful," but bond vacated as excessive) (citations to 1st, 6th, 7th, 9th, 10th and 11th Circuits omitted).

9. *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 910 F.2d 1049, 1054 (2d Cir.1990) (citations omitted); *Nintendo of America, Inc. v.*

*Lewis Galoob Toys, Inc.,* 16 F.3d 1032, 1036 (9th Cir.) (citation omitted), *cert. denied,* 513 U.S. 822, 115 S.Ct. 85, 130 L.Ed.2d 37 (1994).

10. *Blumenthal,* 910 F.2d at 1054 (quoting *Atomic Oil Co. v. Bardahl Oil Co.,* 419 F.2d 1097, 1099 (10th Cir.1969), *cert. denied,* 397 U.S. 1063, 90 S.Ct. 1500, 25 L.Ed.2d 685 (1970) and citing *Wainwright Securities, Inc. v. Wall Street Transcript,* 80 F.R.D. 103, 107 (S.D.N.Y.1978)).

11. *St. Mary of the Plains College v. Higher Education Loan Program of Kansas, Inc.,* 1989 WL 159368 (D.Kan.1989) at 3 (citing *Wainwright Securities,* 80 F.R.D. at 107, *Showtime Mktg., Inc. v. Doe,* 95 F.R.D. 355, 356–57 (N.D.Ill.1982), and *Madison Shipping Corp. v. National Maritime Union,* 204 F.Supp. 22, 23 (E.D.Pa.1962)); *National Kidney Patients Ass'n v. Sullivan,* 958 F.2d 1127, 1134 (D.C.Cir.1992)(injunction "wrongfully issued" because the court lacked jurisdiction to enter it).

12. *Showtime Mktg.,* 95 F.R.D. at 357.

■ Clearly, as the majority of federal courts have construed the phrase, the defendants in the instant case were "wrongfully enjoined or restrained." Defendants claim that they are, therefore, automatically entitled to whatever damages they can prove.[13] A minority of the federal Courts of Appeals have adopted the so-called "automatic damages" standard that defendants urge this Court to adopt. In those jurisdictions, a party that is found to have been "wrongfully enjoined or restrained" must be allowed to recover its provable damages; the judge has no discretion to limit or deny recovery.[14] The better reasoned cases, however, hold that the determination of wrongfulness establishes a rebuttable presumption that the enjoined party is entitled to provable damages.[15] In the jurisdictions that use the "judicial discretion" standard, "a prevailing defendant is entitled to damages on the injunction bond unless there is a good reason for not requiring the plaintiff to pay in the particular case."[16] This standard is preferable to the "automatic damages" standard because "it [is] implied by the text of Rule 65(c) [and] it makes the law more predictable and discourages the seeking of preliminary injunctions on flimsy (though not necessarily frivolous) grounds."[17]

A handful of cases make reference to, but decline to follow, a third standard, the so-called "malicious prosecution" standard. The cases raise and dismiss the theory with language to this effect:

> According to this standard, an enjoined party cannot· recover damages caused by the wrongful issuance of provisional injunctive relief unless the applicant for such relief prosecuted his suit maliciously and without probable cause. This standard is not relevant here, however. It applies only in cases where the applicant for injunctive relief fails to furnish adequate security. See, e.g., In Re J.D. Jewell, Inc., 571 F.2d 928 (5th Cir.1978).[18]

In fact, there is no "malicious prosecution" standard to reject. The handful of cases that mention the standard all misconstrue the one cited authority, In Re J.D. Jewell, Inc.[19] Jewell stated that "if no bond has been executed upon the granting of an injunction, the person enjoined can have no recovery against the moving party" unless he can make out a case of malicious prosecution.[20] It did not announce a third standard as to whether a wrongfully enjoined defendant can recover his provable damages against posted security. In any event, no federal court has attempted to adopt the purported standard..

■ Defendants seek to recover $500,000 in damages. Presuming those damages can be proved at an evidentiary hearing, defendants' recovery will be limited to the value of the substituted security. The "injunction

---

**13.** The parties agree that defendants must prove· the damages sought were proximately caused by the injunction. See, e.g., Pargas, Inc. v. Empire Gas Corp., 423 F.Supp. 199, 244 (D.Md.), aff'd, 546 F.2d 25 (4th Cir.1976) (damages must have been "proximately caused by the injunction and may not be based on speculation or conjecture"); Cappaert Enters. v. Citizens and Southern Int'l Bank, 564 F.Supp. 214, 225 (E.D.La.1983) ("[D]amages are recoverable only if they 'arise from the operation of the injunction itself and not from damages occasioned ... independently of the injunction.'") (citing Lever Bros. Co. v. Int'l Chem. Workers Union, 554 F.2d 115, 120 (4th Cir.1976)).

**14.** See Cappaert Enters., 564 F.Supp. at 217–18 (citing Atomic Oil Co., 419 F.2d 1097 and Buddy Systems, Inc. v. Exer–Genie, Inc., 545 F.2d 1164 (9th Cir.1976), cert. denied, 431 U.S. 903, 97 S.Ct. 1694, 52 L.Ed.2d 387 (1977)).

**15.** Coyne–Delany Co. v. Capital Dev. Bd., 717 F.2d 385, 390–91 (7th Cir.1983) (citations from

8th and 10th Circuits omitted); see also, e.g., National Kidney Patients Ass'n v. Sullivan, 958 F.2d 1127, 1134 (D.C.Cir.1992); Alabama v. United States E.P.A., 925 F.2d 385, 389 (11th Cir.1991).

**16.** Coyne–Delany Co., 717 F.2d at 391.

**17.** Id. at 391–92.

**18.** See, e.g., Cappaert, 564 F.Supp. at 218 (citing In Re J.D. Jewell, Inc., 571 F.2d 928 (5th Cir. 1978)); see also, Alabama v. United States E.P.A., 925 F.2d at 389; see also Denver v. Ameritrust Co. Nat'l Ass'n, 832 P.2d 1054, 1056 (Colo.Ct.App. 1992).

**19.** 571 F.2d 928 (5th Cir.1978).

**20.** In Re J.D. Jewell, Inc., 571 F.2d at 933–34; see also First Mississippi Nat'l Bank v. Ladner, 799 F.2d 1023, 1025–26 (5th Cir.1986)(discussing Jewell).

bond rule" states: "the bond is the limit of the damages the defendant can obtain for a wrongful injunction ... from the plaintiff, provided the plaintiff was acting in good faith...." [21] The cases defendants cite in support of their contention that recovery should be allowed up to the value of the substituted security and original bond are inapplicable to the present case.[22] Without a finding that Emerald brought its claim in bad faith, defendants also may not recover attorneys' fees.[23] Defendants have not questioned Emerald's good faith in the instant case.

■ It is true, as defendants note, that this Court's original estimate of the proper amount required as security was $500,000. Nevertheless, a court's initial estimate need not necessarily bind the parties throughout the proceedings; they may later petition the court to raise or lower the amount of security.[24] In the instant case, Emerald did not petition the Court to lower the amount of security *per se*, but it did ask to substitute HFG stock as security at a time when its value was substantially lower than $500,000. Defendants approved of the substitution, knowing that the amount of damages they could possibly allege at a later hearing was 1.5 million dollars.[25]

### Conclusion

Defendants were "wrongfully enjoined. or restrained," for the purposes of Rule 65(c), because the Supreme Court dissolved this Court's injunction. They will be allowed to recover provable damages proximately caused by the injunction, up to the value of the substituted security, unless Emerald can prove that, as a matter of equity, no such recovery should be had. The parties shall confer and contact the Court to schedule a an evidentiary hearing on the issue of damages.

**21.** *Coyne–Delany,* 717 F.2d at 393; *see also Continuum Co. v. Incepts, Inc.,* 873 F.2d 801, 803 (5th Cir.1989); *Buddy Systems, Inc.,* 545 F.2d at 1168 (action on bond under 28 U.S.C. § 1352); *Adolph Coors Co. v. A & S Wholesalers, Inc.,* 561 F.2d 807, 813 (10th Cir.1977) (citing cases).

**22.** This case does not concern the reinstatement of discharged security; it concerns security that was never discharged but was substituted for, with the agreement of the parties, by a letter of credit and then by shares of stock. *Cf. Atomic Oil Co.,* 419 F.2d 1097 (an independent action on a discharged bond); *Factors Etc., Inc. v. Pro Arts, Inc.,* 562 F.Supp. 304 (S.D.N.Y.1983)(motion to reinstate a discharged bond).

**23.** *Id.* at 309.

**24.** *See Pargas, Inc.,* 423 F.Supp. at 244; *International Ladies' Garment Workers' Union v. Donnelly Garment Co.,* 147 F.2d 246, 252–53 (8th Cir. 1945) (injunction granted pursuant to statute, not FRCP 65(c)); *Cappaert,* 564 F.Supp. at 217 (parties, by joint motion, reduced bond from $300,-000 to $100,000).

**25.** Craig Hall's 1989 Affidavit, taken more than five months after this Court's injunction was vacated, states that defendants suffered damages up to 1.5 million as a result of the five month injunction. *See also* Def.'s Repl. Brf. The HFG stock was substituted as security in March of 1992.