Joseph T. FITZGERALD, Jr., Elaine Brady, Jerry Brady, Joan McKinley, Bill McKinley, Raymond Mears, Bill Moser, Gene Reed, Joe Podgajny, Kathy Podgajny and Carmella Stichter, Plaintiffs,

v.

Joseph E. REARDON, Individually, and in his capacity as Chairperson of the New Castle County Democratic Committee, and Samuel L. Shipley, Individually, and in his capacity as Chairperson of the Delaware Democratic State Committee, The New Castle County Democratic Committee and The Delaware State Democratic Committee, Defendants.

Civ. A. No. 11410.

Court of Chancery of Delaware, New Castle County.

Submitted: Feb. 26, 1990.
Decided: Feb. 28, 1990.

Carl A. Agostini of Agostini, Levitsky & Agostini, Wilmington, for plaintiffs.

Charles J. Durante and Arthur G. Connolly, III of Connolly, Bove, Lodge & Hutz, Wilmington, for defendants.

OPINION

ALLEN, Chancellor.

Plaintiffs are registered Democratic voters who are active in the internal affairs of

their political party. They claim in their complaint to be the duly constituted delegates and alternates from the 8th representative district to the State Democratic Convention which is scheduled to be held on March 3, 1990. They complain that they will be illegally excluded from that meeting because defendant Joseph Reardon, chairperson of the New Castle County Democratic Committee, has refused to certify them as delegates to the State Democratic Committee.

The dispute between these parties entails, but is not limited to, a disagreement about the proper method for the selection of convention delegates. Plaintiffs assert that the Rules of the Democratic Party of the State of Delaware (the "State Rules") provide that delegates to the Convention are selected not by the vote of Democratic voters casting votes at local meetings, but by the members of local democratic party committees.[1] This rule was complied with in plaintiffs' designation as delegates to the State Convention, they say.[2]

This year a new breeze seemed to blow, and the Democratic Party State Parliamentarian expressed the view that Rule 3.3.A. of the State Rules, providing for selection by committee members, was in conflict with Section 8.02 of the Rules of the New Castle County Democratic Party and with selection plans adopted by the National Democratic Party, providing for selection by rank-and-file Democratic voters.[3] The State Executive Committee in response to this conflict resolved that convention delegates throughout the State were to be selected by the vote of registered voters in the representative district, not by the vote of committee persons.

Plaintiffs view this revisionist interpretation of the State Rules by the Executive Committee as unsupportable and beyond the power of the Executive Committee. They contend that they are properly designated delegates and have an enforceable legal right to be so recognized.

Defendants' principal defense is that plaintiffs may be threatened with no injury at all and, in all events, their complaint about the internal workings of the Democratic Party should be taken—as a first step at least—to that party's internal governance machinery for resolution. Specifically, defendants contend that the Credentials Committee of the State Democratic Party has as its major function the determination of the question of the entitlement of persons to serve as delegates to the State Convention. Defendants assert that plaintiffs should have taken their dispute to this committee—not to this court. Indeed, defendants suggest that while the deadline for bringing such a question before that committee has elapsed (after plaintiffs had been put on notice of the deadline) that committee, and plainly the Convention as a whole, has authority to excuse the lateness of any application and to consider the matter.

On this motion, plaintiffs seek an order requiring that they be recognized as delegates to the Convention. Alternatively, they seek an order against the Convention going forward.

The test for the issuance of a preliminary injunction has frequently been stated and is not controversial. Plaintiffs must show first that they have a reasonable likelihood of ultimate success on the merits of their claims. Next, they must show that they

---

1. Section 3.3.A. of the State Rules, as amended on February 29, 1980, provides:

    Each Delegate and Alternate from each Representative District shall be elected by the Democratic Representative District Committee every two years. These elections shall be provided for in the rules of each Sub–Division. The Sub–Division Chairpersons shall certify to the State Chairperson the names, addresses, and *Districts of the Delegates and Alternates of each* Representative District in his Sub–Division by January 1 of each even-numbered year.

2. Defendants assert that all plaintiffs are members of the 8th Representative District Democratic Committee or relatives of such members.

3. Section 8.02 of the New Castle County Rules provides:

    Each Delegate and Alternate from each Representative District shall be elected by the Registered Democrats in each of their respective State Representative Districts as provided by law.

will suffer irreparable injury if the relief sought is not granted. Finally, they must show that the injury to defendants or to others that would be occasioned by the granting of the preliminary relief is less than the injury from which they seek to be protected. *See, e.g., Ivanhoe Partners v. Newmont Mining,* Del.Supr., 535 A.2d 1334 (1987); *Shields v. Shields,* Del. Ch., 498 A.2d 161 (1985). While this legal test does not yield a formulaic answer to such questions, it satisfies its important mission by giving structure to the inquiry to be made.

I treat the matter as one seeking a preliminary injunction and not a restraining order since defendants have had an appropriate opportunity to respond to plaintiffs' argument and have done so.

■ In all events, the test for a preliminary injunction and the test for a temporary restraining order each require the presence of a threat of irreparable injury. Because I conclude that plaintiffs will not suffer irreparable injury if relief is denied, I will deny plaintiffs' requests.

\*     \*     \*     \*     \*     \*

When a court is required to construe the statutory or common law as it applies to the internal affairs of political parties, it must act with hesitation and great care. There is a recognized public interest in the open and effective operation of the major political parties in this State. The special role and responsibilities of these parties give their internal governance a public importance even though these organizations are private in some respects. Thus, for example, a court may be justified in acting to assure that an internal party election is conducted fairly, free from manipulation that threatens the integrity of the election. *See Reardon v. Read,* Del. Ch., C.A. No. 10642 (March 6, 1989) (Order). *Cf. Smith v. Allwright,* 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944). But, concern for the public impact of political party functioning and for parties' freedom of association leads as well to a recognized tendency of courts to refrain from interference with the operation of internal methods of governance. *O'Brien v. Brown,* 409 U.S. 1, 92 S.Ct. 2718, 34 L.Ed.2d 1 (1972); *see also Cousins v. Wigoda,* 419 U.S. 477, 95 S.Ct. 541, 42 L.Ed.2d 595 (Rehnquist, J., concurring).

■ Because the identity and associational freedom of a political party are at stake in controversies about who is a legitimately elected party delegate, courts are particularly reluctant to intervene when deliberative channels within the party are available to address alleged conflicts. *See Democratic Party of the United States v. Wisconsin,* 450 U.S. 107, 101 S.Ct. 1010, 67 L.Ed.2d 82 (1981) (stating that freedom to associate for the common advancement of political beliefs "necessarily presupposes the freedom to identify the people who constitute the association"); *San Francisco County Democratic Cent. Com. v. Eu,* 826 F.2d 814, 827–29 (9th Cir.1987). In the case at bar, it seems readily apparent that this dispute concerning how the Democratic Party is to be governed—the meaning and effect of its internal rules, and thus ultimately the identity of the party itself—should be resolved in the first instance, and perhaps finally, by the party itself through its Credentials Committee and the Convention.

Plaintiffs' explanation why they have not submitted or ought not be required to submit this dispute to the Credentials Committee is, in my opinion, incorrect. Plaintiffs argue that under the particular language of the rule in question, they cannot present the matter to the Credentials Committee. This is the case, they say, because defendant Reardon has refused to certify any delegate from the 8th representative district and Rule 5.2.B. of the State Rules authorizes the Credentials Committee to hear challenges brought by "any registered Democrat" against "any delegate or alternate to the State convention." Thus, plaintiffs say, the rule does not contemplate challenges when, as here, no person has been certified as a delegate or alternate.

State Rule 5.2.B. might support plaintiffs' interpretation, which effectively reads "delegate or alternate" to mean certified delegate or alternate. The rule also would seem to support interpretations that would

authorize the Credentials Committee to act with respect to this question.[4] The important point is that it should be for the Credentials Committee in the first instance to say what the rule means and to recommend action pursuant thereto to the Convention. Moreover, despite any limitation the rule's language may impose upon the Credentials Committee, no such limitation would likely attach to the Convention itself which may amend rules and should be the first, and perhaps the sole, judge of who is entitled to attend.

One need express no large generalization concerning the power or prudence of courts adjudicating rights concerning internal political party matters. It is enough for this day to express the opinion that plaintiffs have an obligation to pursue internal mechanisms that may satisfy their claim. *See Bachur v. Democratic Nat. Party,* 836 F.2d 837 (4th Cir.1987); *Heitmanis v. Austin,* 677 F.Supp. 1347 (E.D.Mich.1988). In the end, the principle referred to above and applied by the United States Supreme Court in *O'Brien v. Brown, supra,* compels denial of the present application. In that case, the Supreme Court noted:

> Judicial intervention in this area traditionally has been approached with great caution and restraint.... It has been understood since our national political parties first came into being as voluntary associations of individuals that the convention itself is the proper forum for determining intra-party disputes as to which delegates shall be seated.

401 U.S. 1, 4, 91 S.Ct. 702, 27 L.Ed.2d 639 (1972).

The application for a temporary restraining order and preliminary injunction will be denied.

---

**4.** An interpretation that sought to uncover the underlying purpose and intent of the rule from its language and context and to apply that understanding to a situation unforeseen by the rule's drafters, might justify that result. *See Federal Deposit Ins. Corp. v. Tremaine,* 133 F.2d 827, 830 (2nd Cir.1943) (L. Hand, J.). Arguably, for example, the rule's purpose is to authorize the Credentials Committee to determine (or recommend to the full convention) who is entitled to recognition as a delegate. On this view, while the specific language chosen was premised upon there being in each instance some delegate certified by the county chairman, that fact was simply an assumed circumstance and the language chosen on that assumption should not be read to imply a limitation that would seem unintended because it would serve no apparent purpose.