VERMONT SUPERIOR COURT
Windsor Unit
12 The Green
Woodstock VT  05091
802-457-2121
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 24-CV-00903



Windsor County Republican Committee, Lynn Baldwin,
August Murray, Peggy Dionne, Earl Dionne, and Andrea Murray
     Plaintiffs

v.

State of Vermont Republican Party, Paul Dame,
and John MacGovern
     Defendants

## Decision on Motion for Temporary Restraining Order

Vermont's major political parties "organize biennially." 17 V.S.A. § 2301. This means that, every two years, the state chair schedules a date for party members "to meet in caucus in their respective towns," 17 V.S.A. § 2302(a), at which time the party voters in each town elect a town committee, 17 V.S.A. § 2304(a)(1), which is then responsible for meeting and electing delegates to the county committee for the ensuing two years, 17 V.S.A. § 2305(a)(2).

The state chair then schedules "a date for the first meeting of each county committee," 17 V.S.A. § 2309(a)(1), at which time the assembled delegates in each county are responsible for meeting and "elect[ing] their officers and perfect[ing] an organization of the county committee for the ensuing two years," 17 V.S.A. § 2309(b)(1), and electing delegates to the state committee. 17 V.S.A. § 2310. "Within 72 hours" of this meeting, the chair and the secretary of the county committee are responsible for providing the state committee with certain information, including a copy of the notice of the meeting, and "a certified list of the names of . . . the officers of the county committee." 17 V.S.A. § 2311(a). After the state committee has conducted some additional business, 17 V.S.A. § 2312, the state chair files a certificate with the Vermont Secretary of State "stating that the party has completed its organization for the ensuing two years and has substantially complied with the provisions of this chapter." 17 V.S.A. § 2313(a)(1). At that point, each county committee is "considered organized." 17 V.S.A. § 2311(b).

In this case, plaintiffs have filed a verified complaint alleging that the first county committee meeting of the Windsor County Republican Party was held on October 18, 2023. At that meeting, plaintiffs allege that John MacGovern and August Murray "were elected together by unanimous consent" as chair and vice-chair. It appears from the filed documents that these names were sent by the county committee to the state committee pursuant to 17 V.S.A. § 2311(a), and that the state chair

subsequently filed the certificate that had the effect of "organiz[ing]" the county committee, 17 V.S.A. § 2311(b). Plaintiffs contend, however, that the manner of electing the chair did not conform to the county committee bylaws, and was therefore "null and void."

Various political disagreements then emerged between Mr. MacGovern and other members of the county committee. Plaintiffs allege that the next meeting of the county committee, held on December 14, 2023, descended quickly into chaos, resulting in Mr. MacGovern leaving the meeting before it adjourned. After Mr. MacGovern left, the vice chair ran the meeting. The remaining committee members then revised the minutes from the October 18th meeting to assert that "[t]here was not a voice vote taken or a motion of acclamation to declare Mr. MacGovern as county chairman and the voting moved on to the vice chair position without disposition." In other words, the remaining committee members revised the minutes to assert that no vote for chair was ever held. The remaining committee members then adopted two separate resolutions censuring Mr. MacGovern and scheduled the next meeting of the county committee for the purpose of "holding an election for county chairman and any vacant positions."

The next meeting was held on January 6, 2024. It appears that Mr. MacGovern did not attend the meeting, believing it to have been unauthorized. At the meeting, the assembled delegates purported to elect Lynn Baldwin as chair of the county committee and August Murray as vice chair of the county committee. The assembled delegates then proceeded to conduct a variety of otherwise-routine business.

Since then, both Mr. MacGovern and Ms. Baldwin have held themselves out as the county chair, and both have taken actions in that role, including constituting their own executive committees, organizing additional towns, conducting committee events, and recruiting candidates for election. In an apparent effort to calm the controversy, the state committee passed a resolution on February 6, 2024, recognizing Mr. MacGovern as the chair and ordering the county committee to recall its officers and hold a new organizational meeting. Plaintiffs contend that the state committee was not authorized to act in this manner. Plaintiffs also assert that the organizational meeting is scheduled for March 16, 2024, but that the meeting will be chaotic because both purported chairs will be present, and that the result of the organizational meeting will be that there will be "two sets of officers claiming authorization to govern the Windsor County Republican Committee."

Plaintiffs seek an ex parte temporary restraining order "cancelling" the March 16th organizational meeting.

An ex parte restraining order is an extraordinary departure from the principles of procedural due process because it represents the intervention of the court without providing the opposing party with advance notice of the request or an opportunity to be heard. 11A Wright & Miller, Federal Practice & Procedure: Civil 3d § 2951. A temporary restraining order should not be granted without prior notice to the other party unless the right to relief is clear and the plaintiff establishes through "specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." Vt. R. Civ. P. 65(a); *Committee to Save the Bishop's House v. Medical Center Hospital of Vermont*, 136 Vt. 213, 218 (1978); *Vermont Democratic Party v. Republican Governors Ass'n*, No. S1285-04 CnC, 2004 WL 5460796 (Vt. Super. Ct. Oct. 26, 2004) (Norton, J.). Here, for the

following reasons, the court is not persuaded that the plaintiffs' right to relief is clear, nor that immediate and irreparable injury will result before the defendants can be heard in opposition.

First, there are constitutional dimensions to a political party's "decisions about the identity of, and the process for electing, its leaders." *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 229 (1989); *Price v. New York State Bd. of Elections*, 540 F.3d 101, 108 (2d Cir. 2008). For this reason, courts exercise "great caution and restraint" when confronted with challenges involving internal disputes of political parties, especially when there are "deliberative channels within the party" that are "available to address alleged conflicts." *Democratic Party of the United States v. Wisconsin*, 450 U.S. 107, 125–26 (1981); *O'Brien v. Brown*, 409 U.S. 1, 4 (1972), *Mohn v. Bucks County Republican Committee*, 259 A.3d 449, 456–59 (Pa. 2021); *Cochran v. Supinski*, 794 A.2d 1239, 1248 (Del. Ch. 2001); *Fitzgerald v. Reardon*, 576 A.2d 183, 185 (Del. Ch. 1990). In this case, the court finds it significant that the state committee has already issued a resolution regarding the controversy. At a minimum, the constitutional interests involved disfavor judicial intervention without at least providing the state committee with notice of the proposed action and an opportunity to be heard.

Second, the identity and alignments of the parties are not clear from the complaint. Plaintiffs are identified as five individual party members and also the county committee itself, though there is no attached resolution authorizing these plaintiffs to bring suit in the name of the county committee. Plaintiffs do not address the significance of the apparent facts that the names of "the officers of the county committee" have already been sent to the state committee, nor that plaintiffs' control of the county committee does not appear to be recognized by the state committee. 17 V.S.A. § 2311(a)–(b). Likewise, it is not clear whether the March 16th organizational meeting is being conducted by any of the individuals or entities who are named as defendants—it rather appears from the verified complaint as though the organizational meeting is being held by the county committee, or at least another iteration of the county committee. At a minimum, again, there is not a clear basis for ex parte judicial intervention, nor a clear identification of whose conduct, exactly, would be the subject of the proposed restraining order.

Third, the verified complaint and the supporting evidentiary materials do not provide a clear understanding of the factual circumstances or applicable rules. Plaintiffs assert in their verified complaint that Mr. MacGovern was elected as chair of the committee on October 18th "by unanimous consent," but the supporting minutes describe the election differently. Plaintiffs also assert that the election, by whatever means, was contrary to the county-committee rules, but the copy of the rules submitted as evidence contains the following notation at the end of the document: "Note: these are the old by-laws from 2002." As such, it is not clear to the court what exactly happened, nor whether it has been provided with a copy of the bylaws that applied to the election that was held on October 18th, 2023. Cf. 11A Wright & Miller, Federal Practice and Procedure: Civil 3d § 2952 (discussing the evidentiary quality of the materials needed to support a request for an ex parte restraining order).

Finally, there is still time for defendants to be heard before the March 16th organizational meeting. A hearing is being scheduled by the court, and a copy of the hearing notice will be provided to plaintiffs. It is plaintiffs' responsibility to serve the hearing notice, together with a copy of this decision and the other required materials, "upon all parties . . . in the manner provided by these rules." Vt. R. Civ. P. 65(b)(1).

For the reasons set forth in this opinion, the court's conclusion is that the issues presented by the complaint and the motion for injunctive relief are better addressed after providing all named parties with notice of the request and an opportunity to be heard.

Electronically signed on Monday, March 11, 2024 pursuant to V.R.E.F. 9(d).

H. Dickson Corbett
Superior Court Judge

Vermont Superior Court
Filed 03/11/24
Windsor Unit